HOWARD ROSS AND THEODORE ROSS, RESIDENTS OF THE STATE OF NEW YORK, AND ROY MILLER, A RESIDENT OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS, v. JAMES M. CANINO AND ALVIN RAPHAEL, NEW JERSEY RESIDENTS, AND H.H.H. SENIOR CITIZENS HOUSING COMPANY, A NEW JERSEY LIMITED PARTNERSHIP, DEFENDANTS, AND ISLAND CITY REALTY, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT, AND JAMES P. DUGAN AND JAMES E. FLYNN, INDIVIDUALLY; JAMES P. DUGAN, A PROFESSIONAL CORPORATION, AND DUGAN & FLYNN, DEFENDANTS AND THIRD PARTY PLAINTIFFS, v. IVAN SHAPIRO, INDIVIDUALLY AND GREENBAUM, WOLFF & ERNST, THIRD PARTY DEFENDANTS.

Argued February 22, 1983—Decided June 30, 1983.

403

*William G. Becker, Jr.,* argued the cause for appellants (*Shanley & Fisher,* attorneys; *William G. Becker, Jr.,* and *Susan M. Sharko,* on the brief).

*Howard E. Drucks* argued the cause for respondent (*McGahn, Friss, Gindhart & Miller,* attorneys).

*James J. Ciancia,* Assistant Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

The issue on this appeal is whether a former Attorney General or the law firm in which he is now a partner, or both, should be disqualified from continuing to represent plaintiffs in a civil suit

because one or more divisions in the Department of Law and Public Safety (Department), during the term of the Attorney General, investigated matters relating to the suit. In an unreported decision, the Appellate Division affirmed the ruling of the Law Division that both the former Attorney General and the law firm were disqualified. We conclude that the law firm may continue to represent the plaintiffs, but that the former Attorney General may not participate in the case.

## I

This matter arises in the context of cross-motions by attorneys to disqualify each other from representing their respective clients in a civil suit. The basic underlying facts are that in 1977 and 1978 plaintiffs, Howard and Theodore Ross and Roy Miller, discussed with defendants James M. Canino and Alvin Raphael the formation of a partnership, H.H.H. Senior Citizens Housing Company (H.H.H.), to build a housing project in Atlantic City. Canino and Raphael allegedly controlled defendant Island City Realty (Island), which owned or was about to acquire the property from Resorts International, Inc. (Resorts). Plaintiffs contend that they have an equitable interest in the property and seek specific performance of an alleged contract to convey the property from Island to H.H.H. Defendants contend that plaintiffs are merely creditors and that the contract is unenforceable under the statute of frauds. *N.J.S.A.* 25:1–5 *et seq.*

On April 7, 1980, the law firm of Shanley & Fisher filed the complaint on behalf of plaintiffs. Nearly a year later, on March 9, 1981, John Degnan (Degnan) resigned as Attorney General of New Jersey and joined Shanley & Fisher, a firm of over fifty lawyers, as a partner. Two months later, on May 12, 1981, Shanley & Fisher filed a motion to disqualify the firm of McGahn, Friss, Gindhart & Miller from representing Island because of its earlier representation of other parties to the suit. The McGahn firm cross-moved to disqualify Shanley & Fisher

from continuing representation of plaintiffs. Briefly stated, the basis of the McGahn cross-motion was that the Division of Criminal Justice (Criminal Justice) conducted certain investigations while Degnan was Attorney General and, because Degnan was now a partner in Shanley & Fisher, that firm should not continue as counsel for plaintiffs.

During the fall of 1980, another division in the Department, Gaming Enforcement, was investigating Resorts in connection with its application for renewal of its casino license. Gaming Enforcement forwarded certain information to Criminal Justice, which began an investigation into real estate transactions between Resorts and Island. Deputy Attorney General Gendzel, who was employed in Criminal Justice, caused subpoenas to be served on McGahn and Dr. Eugene Coyle, a principal of Island. McGahn complied with the subpoenas by meeting with Gendzel in McGahn's office and by delivering to Gendzel certain records concerning the subject property. According to Coyle, Gendzel deposed him while using a copy of the complaint in this action as a basis for questioning.

Edwin Stier, the former director of Criminal Justice, recalled notifying Degnan that a subpoena had been issued to McGahn. As Stier stated in his affidavit, this was the usual procedure when Criminal Justice subpoenaed an attorney because "a Subpoena many times triggers either telephone calls to the Attorney General, or publicity." For his part, Degnan had no recollection of the conversation with Stier and noted that it was not recorded in his daily diary. Degnan concluded, "[a]ccordingly, I can state categorically that I did not have substantial responsibility for, or indeed any involvement in, any matter relevant to the subject matter of this litigation."

The trial court granted both motions. In its decision, that court found that Degnan "had no personal involvement" in the investigation and that

he apparently acquired no confidential information as a result of that investigation and has not shared any information with any member of his law firm. In fact, the subpoena previously referred to covered materials that were already in the possession of the Shanley & Fisher firm as a result of the discovery process.

That court found further, however, that, as a department head, Degnan "had responsibility over the investigation although he did not exercise it."

The Appellate Division affirmed, and the McGahn firm did not seek review of the order precluding it from representing Island. Shanley & Fisher, however, filed a motion for leave to appeal. We granted that motion and stayed the disqualification of Shanley & Fisher on the condition that Degnan "not participate in any way in the matter."

## II

As presented on this appeal, the relevant legal principle is contained in DR 9–101(B), which provides: "A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee."

We have considered the significance of that disciplinary rule in reviewing the circumstances under which former assistant county prosecutors should be disqualified from representing clients on matters that were pending while the assistants were employed in the prosecutor's office. *See In re Advisory Opinion 361,* 77 *N.J.* 199 (1978). The purposes of DR 9–101(B) are to prevent the conflict of interest that inheres in switching sides and to avoid the appearance of impropriety arising out of association with a government agency followed by representation of an adverse party. *Id.* at 201–02. In addressing the question whether a conflict exists, we have determined that any participation in the investigation of a matter by a government attorney is a *per se* bar to representing a private client in the same matter. *Id.* at 202. *See In re Biederman,* 63 *N.J.* 396 (1973). The acquisition of actual knowledge in the course of an investigation will also disqualify a former government attorney from representing an adverse private client. Similarly, a former government attorney will be disqualified if he was substantially responsible for an investigation even if he did not exercise that responsibility. 77 *N.J.* at 203–05. A greater likelihood of

disqualification exists in the smaller prosecutors' offices because the possibility of sharing in the resolution of problems is greater in an office with only a few assistant prosecutors. *Id.* at 205 n. 3.

Viewed from that perspective, the relevant facts disclose that Degnan did not participate in the investigation of the transaction between Island and Resorts. Moreover, apart from his awareness that a subpoena had been issued, Degnan never acquired any actual knowledge of the substance of the investigation. Thus, Shanley & Fisher is not using confidential information acquired at public expense by a former government employee, and neither Island nor any other party to the proceeding is prejudiced because of any information obtained by Degnan while he was Attorney General. Where knowledge gained during government employment is later used to the advantage of some parties to a civil suit, a conflict of interest may arise. Here, however, the former government attorney neither participated in the investigation nor acquired knowledge of its substance.

As Attorney General, Degnan had ultimate responsibility for the fourteen divisions, commissions and boards within the Department. In 1979, the Department had 6,500 employees, including 300 deputy attorneys general, 120 of whom were employed by Criminal Justice. In general, each of the divisions is under the immediate supervision of an appointed director—*e.g.,* *N.J.S.A.* 5:12–55 (Division of Gaming Enforcement); *N.J.S.A.* 52:17B–99 (Division of Criminal Justice). Hence, the Attorney General has overall responsibility, but not immediate supervision, of the activities of Criminal Justice.

Further appreciation for the magnitude of the Department can be gleaned from the fact that in 1979 Criminal Justice conducted 17,191 investigations and Gaming Enforcement received 20,000 applications for review. In the same year, the Division of Motor Vehicles processed 1,156,800 violations. Even putting aside all other activities, the Department bears little

resemblance to the largest county prosecutor's office, and the error of the lower courts was in equating the office of a county prosecutor with that of the Attorney General. It would impute too much to attribute to the Attorney General specific knowledge of everything that happened within the Department during his term of office. Under the circumstances of this case, the ultimate responsibility of former Attorney General Degnan is not tantamount to substantial responsibility. From these facts, concern about a former government lawyer switching sides does not arise.

Previously, we have summarized the relevant considerations in determining whether a conflict creates an appearance of impropriety:

> Whether a conflict creates an appearance of impropriety depends on the facts of each case. *See Opinion 199.* An appearance of impropriety "must be something more than a fanciful possibility. It must have some reasonable basis." *Higgins v. Advisory Comm. on Professional Ethics,* 73 *N.J.* 123, 129 (1977); *see also State v. Rizzo,* 69 *N.J.* 28, 30 (1975) (per curiam) (defendant's counsel removed because law associate was prosecutor). Sometimes the line between conduct that appears to be proper or improper is hazy. Where there is no conflict in fact, an appearance can sometimes shade into the illusion of conflict. Nonetheless, in making our evaluation, we view the conduct as an "informed and concerned private citizen," remaining ever mindful of the need to maintain public confidence in the reputation of the legal profession and in our system of government. *In re Opinion 415, supra,* 81 *N.J.* [318] at 325; "Developments in the Law," *supra,* 94 *Harv.L.Rev.* at 1415–1416. [*In re Professional Ethics Opinion 452,* 87 *N.J.* 45, 50 (1981)].

In this case, no well-informed member of the public should find an appearance of evil in the continuing representation of plaintiffs by Shanley & Fisher. *See* Kaufman, "The Former Government Attorney and the Canons of Professional Ethics," 70 *Harv.L.Rev.* 657, 667 (1957).

Ever mindful of the need to maintain public confidence in the integrity of the bar and the administration of justice, however, we conclude that Shanley & Fisher should screen Degnan from the present proceeding. Government attorneys, in whom the public reposes special confidence, are subject to even closer scrutiny than private attorneys. *See In re Professional*

*Ethics Opinion 452, supra,* 87 *N.J.* at 50; *Perillo v. Advisory Comm. on Professional Ethics,* 83 *N.J.* 366, 373 (1980); *In Re Advisory Opinion 415,* 81 *N.J.* 318, 324 (1979); *State v. Rizzo,* 69 *N.J.* 28, 30 (1975). Our duty to maintain that confidence is especially acute when the government attorney has been the chief law enforcement officer in the State. Under some circumstances, former government attorneys ought not to participate personally in lawsuits even if no independent grounds for disqualification exist. Here, one relevant circumstance is that the private lawsuit relates, albeit indirectly, to the regulation of casinos, an issue that has stimulated heightened judicial sensitivity to maintaining public confidence in government officials. *See Knight v. Margate,* 86 *N.J.* 374 (1981).

Accordingly, we continue our order prohibiting any communication between Degnan and the other members of Shanley & Fisher with respect to this matter. Furthermore, he may not share in any fees generated by the firm's representation of plaintiffs. While erecting a "Chinese wall" around a former government attorney may not be required in some cases or sufficient in others, we believe it to be an appropriate response in this case. *See Armstrong v. McAlpin,* 625 *F.*2d 433 (2d Cir.1980) (*en banc*), vacated and remanded on other grounds, 449 *U.S.* 1106, 101 *S.Ct.* 911, 66 *L.Ed.*2d 835 (1981) (deciding not to disqualify firm where former SEC attorney had been screened from any participation in the case); *United States v. Uzzi,* 549 *F.Supp.* 979, 984 (S.D.N.Y.1982) (refusing to allow "Chinese wall" where former assistant U.S. Attorney had participated in investigation); *Kesselhaut v. United States,* 555 *F.*2d 791, 793 (Ct.Cl.1977) (permitting former government attorney to be screened from case); Note, "Developments in the Law—Conflicts of Interest in the Legal Profession," 94 *Harv.L.Rev.* 1244, 1439–43 (1981).

Although not critical to our result, we note that Shanley & Fisher has been engaged on behalf of plaintiffs for over two years, in the course of which it has spent over one thousand hours on the preparation of this case. At oral argument, we

were advised that new attorneys would require several months to familiarize themselves with the files. Accordingly, the continuing representation of plaintiffs by Shanley & Fisher is consistent with avoiding delay in the determination of this matter and the imposition of unwarranted expense upon litigants.

We affirm the judgment of the Appellate Division insofar as it disqualifies the former Attorney General from participating in this matter, but reverse that judgment insofar as it disqualifies the firm of Shanley & Fisher from continuing to represent plaintiffs.

*For affirmance in part; reversal in part*—Chief Justice WILENTZ, and CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*Opposed*—None.