IN THE MATTER OF TENURE HEARING OF DR. RICHARD E. ONOREVOLE, SCHOOL DISTRICT OF THE TOWNSHIP OF WEEHAWKEN, HUDSON COUNTY.

Argued April 29, 1986—Decided July 21, 1986.

*Michael R. Clancy,* Deputy Attorney General, argued the cause for appellant Office of Administrative Law (*W. Cary Edwards, Jr.,* Attorney General of New Jersey, attorney, *Mary Ann Burgess,* Assistant Attorney General, of counsel).

*Robert P. Glickman* argued the cause for appellant Weehawken Board of Education (*Bendit, Weinstock & Sharbaugh,* attorneys).

*Richard M. Onorevole* argued the cause for respondent, Dr. Richard E. Onorevole (*Connolly, Vreeland & Connolly,* attorneys, *Joseph E. Connolly, Jr.,* on the brief).

The opinion of the Court was delivered by

HANDLER, J.

The question presented is whether an attorney who previously served as an administrative law judge in the Office of Administrative Law and had presided in a case involving particular parties should be disqualified from representing as a private attorney one of those parties in another but different contested case before the Office of Administrative Law. This question implicates a threshold issue whether an administrative law judge presiding over a contested case has the authority to

determine if an attorney should be disqualified on ethics grounds. The Appellate Division ruled that administrative law judges did not have authority to determine the ethics qualifications of attorneys appearing in contested cases in the Office of Administrative Law. It concluded, further, that the attorney in this case, by virtue of his involvement as an administrative law judge in a prior contested matter involving one of the parties, was disqualified from representing that party in the later contested matter in the Office of Administrative Law.

. The procedural history discloses that the attorney who is the object of this litigation, Robert P. Glickman, was appointed an administrative law judge (ALJ) in the Office of Administrative Law (OAL) in July 1979. In August 1983, while serving in that position, he was assigned a budget appeal involving the Weehawken Board of Education in which the Board sought to have restored certain monies cut from its budget by the Weehawken Township Council.

The matter was referred to the OAL as a contested case. There were initial efforts to mediate the dispute. Glickman discussed the matter with representatives of each party, without the adversary party being present. Following negotiations, the budget appeal was settled and Glickman prepared an initial decision encompassing the settlement. The Commissioner of Education rejected the settlement, however, and remanded the controversy to Glickman. In February 1984, Glickman rendered a decision enforcing the settlement but the Commissioner again, in March 1984, remanded the matter to the OAL. However, the matter was placed on the inactive list; in September 1984, it was withdrawn, and in December 1984, dismissed.

On April 1, 1985, Glickman resigned as an administrative law judge and entered the private practice of law. He was retained by the Board to investigate and bring tenure charges against its Superintendent, Dr. Richard E. Onorevole, which charges were filed with the State Commissioner of Education in July 1985, pursuant to N.J.S.A. 18A:6–11. The matter was transfer-

red pursuant to *N.J.S.A.* 52:14F–1 to the OAL as a contested case. On October 2, 1985, Onorevole's attorneys moved to have Glickman disqualified from the case, claiming that Glickman's role as the presiding ALJ in the earlier budget appeal involving the Weehawken Board of Education created a conflict of interest and the appearance of impropriety.

Glickman asserts that Onorevole himself was not a party to the earlier proceeding, and further that he did not receive any information from Onorevole as a witness in that matter. Onorevole claims that he appeared before Glickman as a member of the Board of Education and as a witness on its behalf and that he testified "candidly and without reservation," although he acknowledges that his formal testimony was not taken. The record does not inform us further as to the specific issues in the prior budget contest or the nature and extent of Onorevole's participation.

On October 15, 1985, the administrative law judge denied the motion for disqualification, finding that no conflict of interest existed and that no appearance of impropriety was created. Onorevole then moved to file an interlocutory appeal to the Appellate Division pursuant to *Rule* 2:2–4. The Appellate Division granted leave to appeal, reversed the order of the administrative law judge, and issued a summary decision that disqualified Glickman from representing the school district as special attorney in the tenure proceedings. The OAL then moved before this Court, as did the Board of Education, for leave to appeal from the Appellate Division judgment. We granted the motions for leave to appeal, but declined to dispose of the matter summarily. During the pendency of the appeal Glickman has been removed as special counsel for the Board, which is being represented by its regular attorney. Further, the ALJ, pursuant to statute, *N.J.S.A.* 18A:6–14, has reinstated Onorevole's salary as of December 23, 1985, the disposition of the matter not having occurred within 120 days.

## I.

The first issue we consider is whether there is authority in the Office of Administrative Law to determine the qualifica-tions of attorneys to appear before it in contested cases. We look to general principles of administrative agency practice, to the statutory standards that govern the Office of Administrative Law, and to the constitutional and regulatory authority of the courts to control the practice of law.

As a general proposition, it is recognized that there is inherent authority in a judicial or adjudicative tribunal to prescribe procedures governing practice and to establish standards concerning the qualifications and conduct of persons appearing before it. *E.g., State v. Kavanaugh*, 52 *N.J.* 7, *cert.* den. *sub nom. Matzner v. New Jersey*, 393 *U.S.* 924, 89 *S.Ct.* 254, 21 *L.Ed.*2d 259 (1968); *Goodwin Motor Corp v. Mercedes-Benz of North America Inc.*, 172 *N.J.Super.* 263, 274 (App.Div.1980); *see Cohen v. Hurley*, 366 *U.S.* 117, 123–24, 81 *S.Ct.* 954, 958, 6 *L.Ed.*2d 156, 162 (1961), overruled on other grounds, *Spevack v. Klein*, 385 *U.S.* 511, 87 *S.Ct.* 625, 17 *L.Ed.*2d 574 (1967); *Elder v. Metropolitan Freight Carriers*, 543 *F.*2d 513, 518 (3d Cir. 1976). Standards governing professional eligibility to appear before a tribunal or court include those that prescribe the ethics qualifications of an attorney; and it is generally accepted that an issue as to an attorney's ethical status or qualifications in a particular case is best addressed in the first instance by the tribunal or court before which he or she seeks to appear. *See Wicks v. Central Ry. Company of New Jersey*, 61 *N.J.* 553 (1972); *Gray v. Commercial Union Ins. Co.*, 191 *N.J.Super.* 590 (App.Div.1983).

Although an administrative agency, such as the OAL, is not a "court" in the true or literal sense of the term, many principles and rules that govern judicial proceedings and determinations can be applied to an agency's quasi-judicial or adjudicative functions. Judicial rules of procedure and practice are transferable to administrative agencies when these are condu-

cive to ensuring fairness, independence, integrity, and efficiency in administrative adjudications. *Hackensack v. Winner*, 82 *N.J.* 1, 28–29 (1980). It is therefore reasonable to conclude that an administrative agency that otherwise has the power to prescribe and enforce its own rules of practice and procedure can, within the limitations imposed by paramount judicial authority and its own enabling statute, formulate and enforce standards relating to the ethics qualifications of attorneys before it.

The standards governing the ethics disqualification of attorneys appearing before a tribunal clearly pertain to the rules that generally control agency procedure and practice. The resolution of particular questions as to an attorney's possible ethics disqualifications has an impact on the quality of the agency's performance and implicates the statutory responsibilities of the agency. Such questions, and their appropriate resolution, therefore, transcend the immediate interests of the parties. *See Hasbrouck Heights v. Division of Tax Appeals,* 48 *N.J.Super.* 328, 334 (App.Div.1958).

Moreover, such issues directly affect the integrity and independence of administrative agency performance; conversely, they do not relate directly, if at all, to the merits of the particular case or controversy in which such an issue may arise. Thus, in determining whether an agency has the authority to deal with the question of an attorney's ethics qualifications it is important to acknowledge the stake that the agency has in its own integrity.

The vital interest in the integrity of administrative agency proceedings is expressly recognized by the act creating the Office of Administrative Law, *N.J.S.A.* 52:14F–1. This provides explicitly that the OAL shall have the authority to promulgate uniform standards regarding the conduct of hearings before it. *N.J.S.A.* 52:14F–5. This important power to determine rules of practice has been expressly recognized by the Court. In *In re*

*Uniform Admin. Procedure Rules,* 90 *N.J.* 85, 94 (1982), we acknowledged that

> [t]he administrative law judges have certain important responsibilities which they are to exercise with independence. They are to conduct hearings, make factual findings, and recommend decisions in contested cases for the various State agencies. *N.J.S.A.* 52:14F–5(n). They must be allowed to perform that task unimpeded by agency intrusions into the conduct of such cases. Therefore, the OAL may promulgate rules necessary to promote efficiency, uniformity and impartiality in the conduct of administrative hearings.

If the hearing process is to proceed in a orderly and expeditious manner, the administrative law judge must have the ability to control the conduct of the proceedings. *Id.* at 106.

Pursuant to this statutory mandate, the OAL has adopted appropriate procedural standards for the conduct of cases by administrative law judges, which include the conduct of attorneys in contested matters. See *N.J.A.C.* 1:1–3.8. Significantly, *N.J.A.C.* 1:1–3.8 incorporates by reference the Code of Judicial Conduct and Rules of Professional Conduct promulgated by this Court.

The recognition of the authority of the OAL initially to decide matters such as attorney qualifications would be fully consistent with the jurisdiction of this Court over the practice of law and matters of professional ethics. The Appellate Division noted correctly in its decision in this case that the practice of law is regulated by the courts. However, all OAL decisions as to the ethics disqualification of attorneys would be subject to appropriate judicial review, whether on an interlocutory basis or otherwise. Hence, there is no reason to conclude that an initial ruling by the OAL would in any way nullify or frustrate the exclusive authority of this Court as to such matters. *See In re LiVolsi,* 85 *N.J.* 576, 583 (1981).

It is also contended by the OAL that the principle of exhaustion of administrative remedies required Onorevole in this case first to seek interlocutory review of the ALJ's disqualification decision before the Director of the OAL, as agency head, before seeking leave to appeal to the Appellate Division. *See R.* 2:2–3(a)(2); *R.* 2:2–4.

■ A ruling on this contention is unnecessary. At the time of this appeal there was no explicit administrative procedure calling for an appeal to the Director of the OAL to review the interlocutory ruling of an ALJ on attorney disqualification. Moreover, even if such a procedural course were available by implication, the failure to exhaust this additional administrative remedy is not fatal; exhaustion of administrative remedies is not an appellate jurisdictional requisite. Hence, it was not error or an abuse of discretion when this case arose for the Appellate Division to have granted leave to appeal from the ALJ's order refusing to disqualify Glickman. We note, further, the proposed amendment to *N.J.A.C.* 1:1–3.8, which would authorize Administrative Law Judges to rule on motions relating to attorney disqualification of Administrative Law Judges, appearances of non-lawyers, the assessment of sanctions for costs or expenses, as well as the disqualification of attorneys. The amendment also would authorize the Director of the OAL, as the "agency head," to review and act upon such initial rulings. *See N.J.A.C.* 1:1–3.2(c), as set forth at 18 *N.J.R.* 734.[1] Thus, under this rule, review by the Director of the OAL should be sought before the matter is entertained by the Appellate Division.

We recognize that it is essential that the Office of Administrative Law be empowered to prescribe suitable rules governing its practice and procedure in contested cases, which necessarily include standards governing the qualifications of persons appearing in such matters. We conclude that there is authority and competence in the Office of Administrative Law initially to determine issues relating to the possible disqualification on ethics grounds of attorneys appearing before administrative law judges in contested cases.

---

[1] We are advised that the comment period on the proposed amendment to *N.J.A.C.* 1:1–3.8 is concluded, with action as to final adoption awaiting final determination by the Court of this case.

## II.

We turn now to the meritorious question of whether a former administrative law judge under the circumstances presented should have been disqualified from appearing as an attorney in this case before the OAL.

At the outset, there is a factual disagreement as to the amount and nature of information shared by Onorevole with Glickman while he served as ALJ in the budget-hearing case. Glickman contends he "obtained no information from Onorevole which in any way formed the factual basis for tenure charges against Onorevole." Indeed, according to Glickman and the Weehawken Board of Education, Onorevole, though a witness, was not a party and that the information Onorevole gave was public information that related only to budget matter and in no way to the tenure charge.

Onorevole disagrees with the characterization of his role and suggests that his testimony in the earlier matter was inextricably related to the present tenure action against him. The record, however, does not delineate in any detail the asserted correlation in the two matters; none of the documents that constitute the record indicates the precise nature of the tenure charges levied against Onorevole, or the content of the evidence relevant to those charges. Further, Onorevole contends that he was a party to the budget appeal by virtue of *N.J.S.A.* 18A:17–20, which grants him a seat on the Board of Education, and he therefore appeared before ALJ Glickman both as a witness and as a party.[2]

Several Rules of Professional Conduct bear upon issues of whether under the circumstances presented Glickman was disqualified by virtue of an actual conflict of interest or appear-

---

[2]*N.J.S.A.* 18A:17–20 provides that the school Superintendent "shall have a seat on the board or boards of education employing him and the right to speak on all education matters at meetings of the board or boards" but "shall have no vote."

ance of impropriety. Rules of Professional Conduct, *RPC* 1.12(a), provide:

> a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator or law clerk to such a person, unless all parties to the proceedings consent after disclosure.

Glickman and the Board concede that his conduct should in this case be governed by this provision. We agree. Although this rule does not by its terms govern the conduct of a lawyer who was formerly an administrative law judge, the purpose and policy of the rule are fully applicable to such an attorney. Thus, as applied, the rule focuses our attention upon whether Glickman, with his engagement in this case as a private attorney, undertook to represent the Board in "a matter in which [he had] participated personally and substantially as * * * [an] adjudicative officer...." We are satisfied that the two matters involving Glickman's participation are different. The prior case in which Glickman presided as an ALJ involved a contested school board budget appeal. Its consideration and disposition did not relate to the current case, which involves tenure charges against the superintendent of the school district.

It is contended that another provision in the Rules of Professional Conduct, *RPC* 1.11(a), applies and serves to disqualify Glickman. This provides:

> [A] lawyer shall not represent a private client in connection with a matter (1) in which the lawyer participated personally and substantially as a public officer or employee, (2) about which the lawyer acquired knowledge of confidential information as a public officer or employee, or (3) for which the lawyer had substantial responsibility as a public officer or employee.

We can assume that this provision would apply to an administrative law judge as a "public officer." Nevertheless, Glickman's representation of the school board as "private client" in this case—the tenure proceedings—does not involve the matter—the budget appeal—in which he "participated personally and substantially as a public officer ... or for which [he] had substantial responsibility as a public officer...."

*RPC* 1.11(a)(1), (3). Further, the ALJ in this case was satisfied that Glickman did not acquire knowledge of confidential information during his participation in the earlier budget appeal matter. *RPC* 1.11(a)(2).

█ It is argued more forcefully that apart from an actual disqualifying conflict of interest, Glickman's participation in this matter engenders an intolerable appearance of impropriety. We acknowledge that a retired administrative law judge in his capacity as a private attorney must avoid the appearance of impropriety implicating his former public service. That duty is a strict one because the failure to avoid such apparent impropriety can reflect adversely upon the public office previously held. In *In re Opinion No. 415*, 81 *N.J.* 318, 324 (1979), we stressed, "[w]hen representation of public bodies is involved, the appearance of impropriety assumes an added dimension. Positions of public trust call for even more circumspect conduct."

In the context of former service in the public sector, an appearance of impropriety can arise apart from the attorney's actual role in a prior matter. *See, e.g., Ross v. Canino*, 93 *N.J.* 402 (1983); *In re Advisory Opinion on Professional Ethics No. 361*, 77 *N.J.* 199. Thus, the Rules of Professional Conduct, *RPC* 1.11(b), recognize:

> An appearance of impropriety may arise from a lawyer representing a private client in connection with a matter that relates to the lawyer's former employment as a public officer or employee even if the lawyer did not personally and substantially participate in it, have actual knowledge of it, or substantial responsibility for it. In such an event, the lawyer may not represent a private client....

This standard requires that the attorney's challenged representation must be "in connection with a matter that relates to [his] former employment as a public officer." "Matter" is broadly defined to include "any judicial or other proceedings, application, request for a ruling or other determination ...

controversy, or other particular matter involving a specific party or parties...." *RPC* 1.11(d).

 Nevertheless, it is clear that in this case the current matter involving tenure charges against the school superintendent brought by the school board is not a matter, namely, the budget appeal, that related to Glickman's former employment as an ALJ. Consequently this rule does not serve to stigmatize Glickman's current representation with the appearance of impropriety.

The Rules of Professional Conduct deal further with the standards explicating the appearance of impropriety. They provide:

> in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinarily knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or to the interest of one of the clients. [*RPC* 1.7(c)(2).]

Under this standard, part of the emphasis is upon the representation of different parties. In *In re Opinion No. 415, supra,* 81 *N.J.* at 318, the Court held that an attorney, his partner or associate may not be counsel to a municipality and to the county in which it is located. The Court reasoned that the interests of the respective governmental entities might frequently be antagonistic, creating an appearance of conflict and, so, impropriety. Thus, it concerned a multiple representation situation not present here. *See Perillo v. Advisory Comm. on Professional Ethics,* 83 *N.J.* 366 (1980). Moreover, there has been no suggestion that Glickman in these proceedings may have generated a personal bias or attitude that would prevent him from fairly representing his client, the Board of Education, or give him some improper advantage over Dr. Onorevole. *See Advisory Comm. on Professional Ethics No. 150,* 92 *N.J.L.J.* 209 (1969).

The standard also emphasizes the nature and extent of the appearance of impropriety. The critical guideline is whether an appearance of impropriety would arise in the mind of an "ordinarily knowledgeable citizen acquainted with the facts...." *RPC* 1.7(c)(2). As we observed in *Opinion No. 415, supra,* which elucidated the standard for evaluating appearance of impropriety claims,

> Whether an appearance of impropriety exists is not to be determined in a vacuum. As Justice Sullivan pointed out in *Higgins [v. Advisory Committee on Professional Ethics,* 73 *N.J.* 123 (1977)], "[i]t must have some reasonable basis" and "must be something more than a fanciful possibility." 73 *N.J.* at 129. We must view the conduct as an informed and concerned private citizen and judge whether the reputation of the Bar would be lowered if the conduct were permitted. [81 *N.J.* at 325.]

Here, it seems reasonably clear that the issues involved in the previous budget appeal and those implicated in the current tenure charges are not related or intertwined. Further, no confidential information was shown to have been imparted to Glickman in the prior case that could disadvantage or prejudice Onorevole in the current case. These perceptions are supported by the record and would be shared by informed persons acquainted with the surrounding circumstances. The ALJ, who was in an optimum position to assess Onorevole's claims of the appearance of impropriety, rejected them. He stated

> [I]f you could point out specific information that was conveyed to Mr. Glickman while he was an ALJ that would prejudice your client perhaps there might be [the appearance of a conflict of interest], but it seems to me that he [Onorevole] was performing his function as the representative of the Board of Education in the budget crises and budget hearing and was essentially conveying their position as far as that goes, and I assume whatever information was was [sic] also information was at that time held by the Board of Education. In short, he was acting as an agent of the Board of Education so presumably any information he conveyed to the, to Judge Glickman at that time would have been information that was certainly not privy or private at all but general information that that [sic] the Board of Education undoubtedly had * * *. * * * I think we're quite afield, far afield I think from a real what I perceive as a conflict. I think it's quite easy to raise an appearance of impropriety, I think that can be raised on the most minimal information and frankly I don't see that in this particular case.

We are therefore satisfied that an appearance of impropriety sufficient to disqualify Glickman in these proceedings has not been shown. We add, however, that the obligation of an attorney to disqualify himself from a matter under appropriate ethics standards is a continuing one. *See In re Opinion No. 552*, 102 *N.J.* 194 at 208–09 (1986) (attorney has a continuing obligation to ascertain whether there exist potential conflicts of interest). Consequently if the factual basis upon which the ALJ and this Court reached the conclusion expressed herein is modified or altered, or subsequent developments shed a different light upon the issues and their resolution, the matter of the attorney's possible disqualification can be readdressed.

### III.

We conclude that the Office of Administrative Law has the authority to determine questions of ethics disqualifications of attorneys appearing before it in contested matters. In this case, the administrative law judge determined that a former administrative law judge appearing in a contested case in his capacity as a private attorney was not disqualified by virtue of an actual conflict of interest or appearance of impropriety. We are satisfied for the reasons herein expressed that the administrative law judge had the authority to decide this question and that he determined it correctly.

Accordingly, we reverse the judgment of the Appellate Division that an administrative law judge did not have such authority and that the attorney was disqualified from appearing in this case.

*For reversal*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.