773 A.2d 1191

DIVISION OF YOUTH AND FAMILY SERVICES, PETITIONER–APPELLANT, v. M.S., DEFENDANT–RESPONDENT.

IN THE MATTER OF THE CERTIFICATE OF M.S.

Superior Court of New Jersey
Appellate Division

Argued March 14, 2001—Decided May 1, 2001.

Before Judges KEEFE, STEINBERG and WEISSBARD.

*Arlene M. Turinchak* argued the cause for appellant-intervenor Bergen Record Corporation (*McGimpsey & Cafferty,* attorneys; *Ms. Turinchak* and *Thomas J. Cafferty,* on the brief).

*Arnold M. Mellk* argued the cause for respondent (*Wills, O'Neill & Mellk,* attorneys; *Mr. Mellk* and *Gidian R. Mellk,* on the brief).

*Peter D. Alvino,* Deputy Attorney General, argued the cause for respondent Division of Youth & Family Services (*John J. Farmer, Jr.,* Attorney General, attorney; *Mr. Alvino,* on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

We granted the Bergen Record's motions to intervene and leave to appeal from a determination of the State Board of Examiners, Department of Education (the Board). The Board denied Bergen Record's request for a redacted version of a written decision issued by an Administrative Law judge on April 27, 2000, and amended on May 18, 2000.

The Administrative Law judge's forty-nine page written opinion was issued in consolidated cases titled *Division of Youth and Family Services v. M.S.,* and *In the Matter of M.S.* The first titled case stemmed from this court's reported opinion, *In the Matter of Allegations of Sexual Abuse at East Park High School,* 314 *N.J.Super.* 149, 714 *A.*2d 339 (App.Div.1998). The second titled case resulted from the issuance of an order to show cause by the State Board of Education, requiring M.S. to show cause why her teaching certificates should not be revoked or suspended. In order to maintain "confidentiality of persons and records," as required by *N.J.S.A.* 9:6–8.10(a), the Administrative Law judge used fictitious names for the school district, the school, and the names of the witnesses in the written opinion, as we did in the reported case.

After reviewing the evidence submitted, the Administrative Law judge concluded that M.S. "engaged in acts of substantiated sexual abuse towards her students," and recommended that her name remain in the Division of Youth and Family Services (DYFS) Central registry. The Administrative Law judge also found that M.S. gave untruthful testimony in the prior tenure hearing that resulted in the dismissal of charges brought against her by the local school district. The Administrative Law judge concluded that M.S.'s conduct, considered as a whole, constituted "conduct unbecoming a teacher, or other just cause including but not limited to offenses within the forfeiture statute, *N.J.S.A.* 2C:51–2, or the disqualification statute, *N.J.S.A.* 18A:6–7.1." Accordingly, the judge recommended revocation of M.S.'s teaching certificate. In an order dated May 18, 2000, the Administrative Law judge

also determined that "the entire record and the Initial Decision in this matter be ... sealed," subject to review by the Board. The judge cited *N.J.S.A.* 9:6–8.10 and *N.J.A.C.* 1:1–14.1 as authority for the order.

At its meeting on June 15, 2000, the Board reviewed the Administrative Law judge's decision, the exceptions, reply exceptions, and other matters submitted by the parties. With the exception of one evidential ruling, which the Board found to be harmless error, the Board accepted the Administrative Law judge's findings of fact and conclusions. As a result, the Board issued a final order revoking M.S.'s elementary school teacher and handicapped teacher certificates. The Board's decision was issued on July 12, 2000, and has since been released to the Bergen Record.

In a motion filed with the Office of Administrative Law (OAL), the Bergen Record sought intervention and a copy of the Administrative Law judge's opinion. The Administrative Law judge responded that she no longer had jurisdiction to act in the matter and referred the Bergen Record to the Board. In a letter to the Board, dated June 5, 2000, the Bergen Record informed the Board that it sought only a copy of the Administrative Law judge's decision. The letter made it clear that the Bergen Record did not "seek any DYFS records nor [the identity of] the minors involved." In response, the Board stated:

> Pursuant to *N.J.S.A.* 9:6–8.10 and *N.J.A.C.* 1:1–14.1, the entire record in the above referenced matter, inclusive of the Initial Decision, has been sealed by Order of Administrative Law Judge ... Any release of the matter must be by application to the Superior Court, Chancery Division pursuant to *N.J.S.A.* 9:6–8.10(a).

The issue to be decided is whether the Board correctly determined that, because the Administrative Law judge sealed the record pursuant to *N.J.S.A.* 9:6–8.10 and *N.J.A.C.* 1:1–14.1, "any release of the matter must be by application to the Superior Court, Chancery Division pursuant to *N.J.S.A.* 9:6–8.10(a)," and, if not, whether and under what circumstances the opinion may be released. We hold that the Chancery Division is not the appropriate forum for consideration of such applications, and remand the

matter to the Board for further proceedings consistent with this opinion.

We first address the specific holding of the Board that the Chancery Division is the appropriate forum for the Bergen Record's application. *N.J.S.A.* 9:6–8.10a provides in relevant part:

All records of child abuse reports made pursuant to section 3 of P.L.1971, c. 437 (C.9:6–8.10), all information obtained by the Division of Youth and Family Services in investigating such reports including reports received pursuant to section 20 of P.L.1974, c. 119 (C.9:6–8.40), and all reports of findings forwarded to the central registry pursuant to section 4 of P.L.1971, c. 437 (C.9:6–8.11) shall be kept confidential and may be disclosed only under the circumstances expressly authorized under subsections b., c., d., e. and f. herein. The division shall disclose information only as authorized under subsections b., c., d., e. and f. of this section that is relevant to the purpose for which the information is required, provided, however, that nothing may be disclosed which would likely endanger the life, safety, or physical or emotional well-being of a child or the life or safety of any other person or which may compromise the integrity of a division investigation or a civil or criminal investigation or judicial proceeding. *If the division denies access to specific information on this basis, the requesting entity may seek disclosure through the Chancery Division of the Superior Court.* This section shall not be construed to prohibit disclosure pursuant to paragraphs (2) and (7) of subsection b. of this section.

[ (emphasis added).]

We need not go beyond the plain wording of the statute to resolve the threshold question. Clearly, the Legislature has placed jurisdiction in the Chancery Division only where an application for access to DYFS records has been made and denied. The application here was made to the Administrative Law judge and the Board, not DYFS.

The OAL is a quasi-judicial body that, while not a court in the truest sense, has powers and procedures similar to the Superior Court. *See In re Tenure Hearing of Onorevole,* 103 *N.J.* 548, 555–56, 511 *A.*2d 1171 (1986). Not surprisingly, therefore, there are parallels between OAL regulations and Superior Court rules in matters involving access to OAL's quasi-judicial proceedings. There is a presumption of public access to such proceedings, unless the Administrative Law judge for "good cause shown, order[s] the sealing of the record or any part thereof." *N.J.A.C.* 1:1–14.1(a); *compare R.* 1:2–1. In determining whether good

cause exists, the Administrative Law judge is given guidance by principles contained in *N.J.A.C.* 1:1–14.1(b), which provides:

> In considering whether to close a hearing and/or seal a record, the judge shall consider the requirements of due process of law, other constitutional and statutory standards and matters of public policy. The judge shall consider the need to protect against unwarranted disclosure of sensitive financial information or trade secrets, to protect parties or witnesses from undue embarrassment or deprivations of privacy, or to promote or protect other equally important rights or interests.

Although the literal wording of *N.J.S.A.* 9:6–8.10a does not apply to OAL proceedings, we assume that the Administrative Law judge's reference to that statute in the order sealing the record of the proceedings was intended to incorporate the public policy that undergirds the statutory language. We have no hesitancy in agreeing with the Administrative Law judge in that respect. Clearly, the purpose of the statute is to protect minors that have experienced abuse from any potential harm and embarrassment that might result from unfettered public access to proceedings that rely upon DYFS records or investigations. The statute so states: "nothing may be disclosed which would likely endanger the life, safety, or physical or emotional well-being of a child or the life or safety of any other person. . . ." *N.J.S.A.* 9:6–8.10a. Neither the judge nor the Board, however, explained how access to the opinion would offend the legislative policy.

Further, there is no indication in the OAL record that the Administrative Law judge or the Board considered the competing interest of press access to public records and proceedings. It cannot be seriously questioned that sexual abuse by a teacher toward her students is a matter of public concern. The fact that the accused teacher in the current proceeding was exonerated in a prior administrative hearing, which resulted in the release of that Administrative Law judge's opinion, while the opinion in the current case was kept sealed, raises additional issues concerning public confidence in the process by which guilt is determined, and puts the matter at hand beyond debate with respect to the legitimacy of the public's interest. Yet, despite the Bergen Record's legitimate interest in seeking access to the Administrative Law judge's decision, the order denying access reflected no rela-

tive balancing of the competing interests, as is clearly contemplated by *N.J.A.C.* 1:1–14.1(b).

We recognize that public access to "civil trials and proceedings ... may be overcome when an important state interest is at stake." *Div. of Youth and Fam. Serv. v. J.B.*, 120 *N.J.* 112, 127, 576 *A.*2d 261 (1990). Indeed, as the Court pointed out, there is a presumption of closure to "DYFS proceedings initiated under Title 30 or Title 9." *Ibid.* Further, in such cases, it is "the rare situation in which the public's right to attend judicial proceedings is not outweighed by the state's compelling interest in conducting a private hearing." *Id.* at 129, 576 *A.*2d 261. While only part of the consolidated proceeding falls within the category of cases about which the Court was speaking, we have no difficulty in applying the presumption to the Board's proceedings as well, since the same evidence was used in each. Nonetheless, "[t]he presumption of closure does not ... equate with a mandatory rule. Members of the public, including the press, must be free to make application to the trial court to be permitted to attend DYFS proceedings." *Id.* at 127, 576 *A.*2d 261

Here, of course, the Bergen Record did not attempt to gain access to the "proceedings" before the Administrative Law judge. The application was limited to the judge's opinion, which contains a synopsis of the evidence produced, and the judge's analysis of the evidence that served as the basis for the recommendations made to DYFS and the Board. The Administrative Law judge and the Board, however, applied the equivalent of a mandatory rule of non-access. Such an approach, as *J.B.* teaches, is legally unsupportable. *See id.* at 124–29, 576 *A.*2d 261. We are confident that the Administrative Law judge's opinion can be redacted to the end that an appropriate balance can be made between the important public interests at stake. Accordingly, the order under review is reversed and the matter is remanded to the Board for further proceedings. On remand, we suggest that the Attorney General make recommendations to the Board with respect to how the opinion can be redacted. Those recommendations should be

supported by reasons grounded in the policies enunciated in *J.B.* and *N.J.S.A.* 9:6–8.10(a). The Bergen Record should also be given an opportunity to submit a brief to the Board outlining in broad terms the nature of the information it seeks in order to carry out its public charge.

Reversed and remanded. Jurisdiction is not retained.