238 N.J. Super. 490 (1989)
570 A.2d 44
IRA MARXE, PLAINTIFF,
v.
RUTH MARXE, DEFENDANT.
Superior Court of New Jersey, Chancery Division Bergen County, Family Part.
Decided December 6, 1989.
*491 Gene N. Schiffman, Esq. for plaintiff.
Stern, Steiger, Croland, Tanenbaum & Schielke, Esqs. for defendant.

OPINION
KRAFTE, J.S.C.
The issue presently before this court is whether the employment of the former Law Clerk of the trial judge precludes the continued representation of the plaintiff by the hiring firm or, alternatively, whether the sitting judge must recuse himself. This court holds that it is well within the guidelines of ethical conduct to maintain the status quo without prejudice to any of the parties.
It was stipulated that the motion is properly before this court both as to substitution and to recusal.
The plaintiff-husband filed for divorce on May 5, 1987, with the initial motion for pendente lite support decided by the court in April 1988. As is the case in numerous divorce actions in which the marital estate is substantial, the final disposition has not yet been reached.
Attorneys practicing in the State of New Jersey are aware that law clerks of Superior Court judges begin their term of service on the first of September and continue until the thirty-first of the following August. Therefore, the time period on which the defendant focuses her concern is September 1988 through August 1989. During those months, four motions and one cross motion were decided. All the applications concerned non-substantive issues which will not be part of the subject matter of the pending trial. On December 7, 1988 an order was entered after oral argument in open court regarding the taking *492 of deposition and production of documents and the procedural issue of bifurcation of trial. The next motion was returnable February 3, 1989, and sought the return of the 1987 income tax refund check from defendant to plaintiff. At the same time, a cross-motion for an increase in pendente lite support and to compel Mr. Marxe to share the refund check was also filed. Oral argument on those motions was had, limited to whether or not there was a sufficient change of circumstances to warrant the relief requested by Mrs. Marxe. Such increase was denied by an order entered March 13, 1989, and defendant was compelled to execute an authorization for the issuance of a replacement refund check by an order dated April 27, 1989.
Another motion was filed by a third party, returnable on February 6, 1989, which concerned the issue of whether a non-party, non-resident was immune from service of a trial subpoena when he came into the jurisdiction for depositions at the request of the court appointed accountant. An order denying the motion to quash was signed on April 26, 1989, thereby sustaining defendant's position. An opinion was rendered on this issue. Marxe v. Marxe, 233 N.J. Super. 247, 558 A.2d 522 (Ch.Div. 1989).
The final motion filed during the time period in question also concerned discovery issues and the filing of a joint 1988 income tax return and was decided by an order entered on August 10, 1989. The original return date was June 9, 1989, and the judge's decision was communicated to the parties' respective attorneys on June 29th by someone on his staff other than his clerk. While there was a dispute as to the proper form of order, the judge himself reviewed the objections and determined the final form without any participation by the clerk.
On July 14, 1989, the law clerk accepted an offer of future employment with Schiffman, Berger and Kaufman, the law firm representing Mr. Marxe. During the several interviews conducted by the partners, at no time was this or any litigation pending before the judge ever discussed. Further, since she *493 has become associated as an attorney with the firm, this court is satisfied that a strict hands-off policy has been observed and that there has been absolutely no involvement with the Marxe case. Counsel for the defendant appears to concede this.
New Jersey Rules of Professional conduct deal with successive government and private employment.
Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter (1) in which the lawyer participated personally and substantially as a public officer or employee, (2) about which the lawyer acquired knowledge of confidential information as a public officer or employee, or (3) for which the lawyer had substantial responsibility as a public officer or employee.

R.P.C. 1.11(a); (emphasis supplied.)
More specifically the rules deal with the representation of a party by a lawyer who has "participated personally and substantially" as a judge or law clerk to such person, mandating that all parties must consent after disclosure. R.P.C. 1.12(a).
First, Mr. Schiffman has assured the court that the judge's former clerk is not involved in the representation of Mr. Marxe, nor will she be at any time in the future. Next, while defendant's attorney claims that the "quantum" of participation is not material, but rather that any involvement at all is all that is relevant, the rule is clear that substantial involvement is the standard. The Advisory Committee on Professional Ethics defines substantial responsibility in Opinion 614, entered July 26, 1988, as making a decision regarding a matter of substance. 901:5808 ABA/BNA Law Man. on Professional Conduct (1989). The law clerk explained her primary duties for the judge were to keep track of approximately 40 to 65 motions submitted to the court every other week, some of which were argued orally on the record, others requiring a summary of the pleadings to assist the judge to review. Decisions were then rendered by the judge and communicated to the parties. It is unreasonable to suggest that particular or substantial participation was given to any one matter over another with the volume of litigation dealt with on a daily basis. It must be unquestioned that at no time does anyone other than the judge *494 ever decide any issue. The only exposure the law clerk has is to papers submitted to the court which are public record and in no way can be said to be confidential information which the "government is prohibited by law from disclosing to the public or has a legal privilege not to be disclosed and that is not otherwise available to the public." R.P.C. 1.11(e).
Mrs. Marxe believes her husband's attorneys will now have intimate knowledge of the Court's action in the case. It is submitted here that there is no such knowledge to be had. Any information to which the court is privy is available to both parties and the public alike. The rules also cover situations where
An appearance of impropriety may arise from a lawyer representing a private client in connection with a matter that relates to the lawyer's former employment as a public officer or employee even if the lawyer did not personally and substantially participate in it, have actual knowledge of it, or substantial responsibility for it. In such an event the lawyer may not represent a private client, but a firm with which that lawyer is associated may undertake or continue representation if: (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom, (2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule. R.P.C. 1.11(b).
Thus, as long as the attorney is not involved in any way with the matter at hand, it is within the ethical guidelines established for attorneys of the State of New Jersey for Schiffman, Berger & Kaufman to continue representation of Mr. Marxe. As has been already established, the judge's former clerk is not presently representing plaintiff. Also during her clerkship, she did not participate personally and substantially within the meaning of the Rule.
In spite of such circumstances, the judge was made aware of the talks between his clerk and plaintiff's attorneys regarding an association after her term was completed. Rule of Professional Conduct 1.12(b) permits negotiations for employment between a law clerk to a judge and an attorney involved in a matter after the lawyer has notified the judge. There was full compliance with this rule and the court had no objection as long *495 as the previously cited rules were also followed. The finding here is that all parties have been fully protected.
Defendant's attorney mistakenly relies on Dewey v. R.J. Reynolds, 109 N.J. 201, 536 A.2d 243 (1988) in support of this motion. In that case, an attorney associated with the defense of the tobacco industry moved to a firm representing parties suing the cigarette companies. The attorney did have access to confidential information which, even with a "Chinese Wall" screening him from the litigation at his new firm, could not avoid the appearance of impropriety. However, in spite of its conclusion, the court found compelling circumstances in the client's right to counsel of choice to warrant continued representation by the firm. Here, no such protected information exists. The Supreme Court held that the appearance of impropriety alone does not per se require disqualification and that any disqualification should be based upon the actual representation of one of the defendants. Id. at 215, 536 A.2d 253. Mrs. Marxe refers only to her "beliefs" and "concerns" that she may be unfairly disadvantaged. Dewey affirms there must be a "reasonable basis" for a finding of impropriety and not merely a "fanciful possibility." Id. at 216, 536 A.2d 243, quoting Higgins v. Advisory Committee on Professional Ethics, 73 N.J. 123, 129, 373 A.2d 372 (1977). The fundamental reasoning in Dewey for a finding in favor of an ethical disqualification is the preservation of a client's confidence. No such factors are present in this case.
Under any circumstances, the disqualification of an attorney in pending litigation "does a great disservice to the affected client ..." and "has an impact ... on the efficiency of our judicial system." Id. 109 N.J. at 221, 536 A.2d 243. Mrs. Marxe does not prove or even hint at any substantive reason for her fears or her allegations. Without more, mandatory substitution of attorneys is not warranted.
This finding is further supported by Opinion 633, 124 N.J.L.J. 1121 (November 2, 1989), in which the Advisory Committee *496 on Professional Ethics found that some form of "Chinese Wall" or screening device was sufficient to isolate an attorney at the hiring law firm from cases on which there was participation but no access to confidential information as a law clerk while in the employ of the adversary firm.
Two opinions have been recently issued by the Advisory Committee which clarify this court's interpretation of the application of the Rules on Professional Conduct to the present matter. A former prosecutor cannot represent a fraud victim in a civil case when the attorney had initiated and carried out the process which led to the indictment of the defendant in the criminal case based on the same evidence. The former prosecutor had confidential information and substantial responsibility in the criminal matter, thereby creating the appearance of impropriety prohibited by R.P.C. 1.11. Opinion 635, 124 N.J.L.J. 1420 (December 6, 1989). Again it must be emphasized that no such confidentiality existed as to any information accessible to this law clerk. Additionally, government attorneys and prosecutors have been the subject of numerous Advisory Opinions with special attention given to the value of public confidence in those government officials. Ross v. Canino, 93 N.J. 402, 461 A.2d 585 (1983) citing In Re Professional Ethics Opinion 452, 87 N.J. 45, 432 A.2d 829 (1981); Perillo v. Advisory Committee on Professional Ethics, 83 N.J. 366, 416 A.2d 801 (1980); In Re Advisory Opinion 415, 81 N.J. 318, 407 A.2d 1197 (1979); State v. Rizzo, 69 N.J. 28, 350 A.2d 225 (1975). Thus, R.P.C. 1.11 precludes subsequent representation of a client on matters which were pending while the attorney was employed by the government or in any civil proceeding related to such matters. However, even when the former prosecutor was personally disqualified, his firm was permitted to continue representation as long as he was properly screened. Ross, supra, 93 N.J. at 410, 461 A.2d 585. See also In re Advisory Opinion 361, 77 N.J. 199, 390 A.2d 118 (1978).
Opinion 636, 124 N.J.L.J. 1420 (December 6, 1989), deals specifically with the employment of a former judicial law clerk. *497 In that inquiry, the former clerk did not have any responsibility for the matters which were being litigated by the firm with which he became associated after his clerkship. Under those facts, not even an appearance of impropriety was created. Therefore, no screening was necessary. Here, although the clerk's participation was neither personal nor substantial as anticipated by the rules, plaintiff's attorneys have carefully erected a "Chinese Wall" between their new associate and the Marxe litigation, so that "no well-informed member of the public should find an appearance of evil in the continuing representation." Ross, supra, 93 N.J. at 409, 461 A.2d 585.
The committee also reaffirmed its Opinion 525, 113 N.J.L.J. 365 (April 5, 1984) by quoting it. "Young lawyers should not unreasonably and unnecessarily have their careers severely stunted if ethical considerations remain intact and the public perception does not suffer." This court finds the Advisory Committee's opinion to be persuasive.
In U.S. v. Walsh, 699 F. Supp. 469 (D.N.J. 1988), the Federal District Court applied Federal Standards regarding the disqualification of a law firm involved in the representation of a party when the defense counsel had previously been employed by the Government's organized crime task force. In discussing the more stringent New Jersey Rules of Professional Conduct, the court noted that only when the attorney has been "personally and substantially" involved does the screening mechanism not suffice to weigh against the necessity of disqualification. Id. at 472. It has been established here that the involvement the clerk had with the matter before the court did not at any time reach the level of participation which would require the substitution of attorney under the rules.
Also, there appears to be no basis either in the rules or case law for defendant's argument that it is not the shielding mechanism utilized while in the private sector which satisfies the ethical standards, but rather the exposure to the matter while working for the judiciary which violates it.
*498 According to the New Jersey Code of Judicial Conduct, "a judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Canon 3(C). This is further clarified by R. 1:12-1. The mere association of a former law clerk with a firm which appears before a judge does not create a situation where a fair and unbiased hearing should be precluded nor would it reasonably lead counsel or the parties to believe so. R. 1:12-1(f).
The generally accepted policy for the Superior Court in Bergen County is to observe a one year hiatus before law clerks may appear before the judge under whom they served. This policy has never disallowed the appearance of the firm with which that law clerk has become associated. Mrs. Marxe fears that the court may inadvertently or unintentionally show greater deference to her husband's attorneys because of their association with the law secretary who worked on the earlier motions. Fear of such impartiality is absolutely unwarranted. Counsel for defendant has on its staff one of this judge's former law clerks as well as the former clerks of other Superior Court judges. The fact that their associates did not work on this particular case while clerking would not be enough to distinguish them from the judge's most recent clerk under the defendant's expressed concerns. Certainly it cannot be suggested that because there is a considerable matrimonial estate that the parties should here be treated in a manner different from those in any other pending case.
Federal District Courts have considered similar motions for recusal when a former law clerk is representing a party in the judge's court and such challenges have been rejected by the Court of Appeals or denied by the District Court judge. See Smith v. Pepsico, Inc., 434 F. Supp. 524 (S.D.Fla. 1977) citing Wolfson v. Palmieri, 396 F.2d 121 (2 Cir.1968); U.S. v. Trigg, 392 F.2d 860 (7 Cir.1968); Reddy v. Jones, 419 F. Supp. 1391 (W.D.N.C. 1976).
*499 Federal standards for recusal are the same as those set by the State of New Jersey. 28 U.S.C.S. § 455(a) (1988). The questionable impartiality is defined as whether a reasonable person would so question, knowing the relevant facts and circumstances and is an objective standard. Duke v. Pfizer, Inc., Div. of Pfizer Hosp., 668 F. Supp. 1031 (E.D.Mich. 1987). Since the former law clerk is not working on this case, is not involved whatsoever in the representation of plaintiff and since she will not come before the judge for any matter for a one year period, this court finds no appearance of partiality. The public announcement of her association does not infer that Schiffman, Berger, Kaufman will be treated any differently from any other law firm whomever may be presently on staff. These announcements are of such common practice as to be without merit as a legal argument. There are no facts presented which indicate otherwise.
The court observes in passing that some judges ... employ law clerks with the specific expectation the clerks will remain in that city or area to practice law. If a court were to accept the contention that recusal was necessary whenever any counsel had been a prior law clerk to a judge, this would be an unfair penalty placed upon former law clerks of Federal Judges. In addition, United States judges themselves would suffer an obvious limitation on their recruiting of talented law clerks in the future."

Smith, supra, at 526.
Since Bergen County requires that their Superior Court Law Clerks be residents of the county, this court concurs that the chilling effect upon the present judicial system would be significant were this court to accept defendant's argument.
The position of law clerk for a judge of the Superior Court of New Jersey has long been coveted by graduating law students for its unparalleled opportunity to gain experience and knowledge of the laws and practice of the State through the day to day exposure to our judicial system. Law firms have long looked toward the body of law clerks completing their tenure as sources for associates who would have just that kind of experience  not because they have any special insight into the mind of a particular judge, or intimate confidential information, or *500 because it would afford the firm any preferential treatment. To suggest otherwise impugns the intergrity not only of this particular court, but of the entire New Jersey judicial system and of the organized Bar itself.
The defendant's attorney suggests that before any firm decides to employ a judge's law clerk, it must seek the consent of the other firms which may appear before that judge. He contends this procedure should be followed regardless of any involvement in a particular matter. It seems that such a procedure would seriously  and perhaps unconstitutionally  impair the ability of someone working as a clerk to ever find desirable employment, no less join the firm of choice. The scenerio becomes even more obtuse when the trial calendar of this particular court has on it over 600 cases. To carry defendant's position one step further would mean that firms interested in hiring law clerks in the Appellate Division and the New Jersey Supreme Court would also need to follow the same procedure in order to satisfy this standard. This would clearly have a negative impact upon the workings of the court systems.
This court is satisfied that there has been no ethical deviation from the standard procedure heretofore applied when a law clerk is hired at the end of tenure and that both the court and the attorneys representing plaintiff have abided by guidelines approved by the advisory opinions of the Committee on Professional Ethics.
The law clerk had no confidential information which would in any way harm the position of defendant and further has continued a hands-off policy at her destination firm, thereby creating a "Chinese Wall" as required by the New Jersey Code of Professional Responsibility. Defendant's motion for substitution of attorney or alternatively, recusal of the trial judge, is hereby denied.