827 A.2d 306

RICHARD COMPARATO, PLAINTIFF–APPELLANT,
v. ROCHELLE SCHAIT (FORMERLY KNOWN AS
COMPARATO), DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 29, 2003—Decided July 11, 2003.

Before Judges STERN, COBURN and ALLEY.

*Bonnie C. Frost* argued the cause for appellant (*Einhorn, Harris, Ascher, Barbarito, Frost & Ironson,* attorneys; *Patricia L. Veres,* on the brief).

*Neil S. Braun* argued the cause for respondent (*Gomperts & Braun,* attorneys; *Mr. Braun,* of counsel and on the brief; *Priscilla A.J. Miller,* on the brief).

The opinion of the court was delivered by

STERN, P.J.A.D.

We granted leave to appeal from an order of October 28, 2002, which denied plaintiff's application to disqualify the trial judge, the firm presently representing defendant, and the firm which previously represented defendant (where defendant's lead counsel, Neil Braun, Esq., had previously been a partner). The motion was based on the fact that Priscilla Miller, Esq., an associate who accompanied Mr. Braun from the original firm representing defendant to the present firm, and who is now working on the case, had served a clerkship with the trial judge while the judge handled aspects of the case. Plaintiff argues that "the trial judge should have been recused and the defendant's present and former counsel should have been disqualified given that Ms. Miller's representation of defendant was never disclosed nor consented to by all parties and the appearance of impropriety cannot be cured."

## I.

The underlying facts are not in dispute. Plaintiff commenced divorce proceedings on May 22, 1995. The case was decided in December 1998. The final judgment of divorce was entered on April 13, 1999. The trial judge thereafter heard several post-judgment applications.

Ms. Miller served as the trial judge's law clerk from September 1999 to August 2000. As part of her duties, she "primarily was responsible for the court's motion calendar each motion day," attended oral arguments and conferences in chambers, and "performed research for the Court." During her clerkship, several post-judgment motions were filed in the matter. On September 24, 1999, an order was entered which granted a motion filed by defendant in August 1999 to enforce litigant's rights. In November 1999, defendant filed another motion to enforce litigant's rights, and after argument on December 3, 1999, an order was entered on February 10, 2000, granting that motion. On April 20, 2000, the judge issued a warrant for plaintiff's arrest as a result of plaintiff's "failure to abide by the Judgment of Divorce and the Court Order dated February 10, 2000." Other aspects of the matter remained pending.

Upon the completion of her clerkship, Ms. Miller began working as an associate of Donahue, Braun, Hagan, Klein & Newsome, P.C. ("Donahue firm") from September 2000 until April 2002. During this time she had no involvement with this case or the client.[1] On April 15, 2002, Ms. Miller left the Donahue firm and became associated with the law firm of Gomperts & Braun ("Gomperts firm") which Mr. Braun formed with Gerri Gomperts, Esq. Mr. Braun took the file with him to his new firm, and a substitution of attorney was filed on July 15, 2002. In the interim,

---

[1] In a letter from Mr. Braun to the trial judge when the present issue arose, it was said that, while at the Donahue firm, "at no time did she have any contact with the Comparato file or with the client." In a certification on the motion, Ms. Miller said that she had "no recollection of having any substantial involvement with this matter."

defendant was granted relief in the form of discovery, and plaintiff sought leave to appeal. Ms. Miller was assigned to review the Notice of Motion for Leave to Appeal and, on July 9, 2002, drafted a response on behalf of defendant. Ms. Miller thereafter pursued the "discovery requests" and corresponded "once with the court stating [defendant's] position with reference to plaintiff's stipulation of his ability to pay alimony." Ms. Miller further certifies that she met defendant for the first time on September 5, 2002. Thereafter, she met defendant "on one occasion thereafter to update her Case Information Statement" prior to its filing in the pending proceedings.

On September 24, 2002, Ms. Miller attended a deposition of plaintiff being taken by Mr. Braun. During the session, Ms. Miller told plaintiff's attorney that she "recognized" her, and advised counsel that she "was the former law clerk to the" trial judge. According to opposing counsel, Ms. Miller "referenced motions [before the judge in this matter] during her tenure as law clerk." After the deposition, the only involvement Ms. Miller had with the case is a follow-up letter to opposing counsel "requesting additional discovery [of plaintiff]," although plaintiff asserts Ms. Miller "has been actively working on the ... matter almost immediately upon the Substitution of Attorney."

On October 4, 2002, plaintiff wrote a letter to the trial judge requesting that he "recuse himself" because Ms. Miller was his law clerk when certain motions were before the court and post-judgment orders were entered. Plaintiff further requested that the court recuse and disqualify Ms. Miller and her present and prior law firms, and the judge held a hearing on the matter on October 28, 2002.

Plaintiff argued that defendant was required to retain new counsel to avoid "the appearance of impropriety." Plaintiff asserted that Ms. Miller had "access [to the] judge's thoughts and perceptions and credibility assessments that are not had by the general public." Plaintiff further suggested that it is too late to create a "Chinese wall," because "once the damage is done ... the

entire matter is tainted." Mr. Braun argued that Ms. Miller did not have "intimate knowledge" or "confidential information" that was not public record, and that neither Ms. Miller nor the firm were disqualified.

The court noted that "[i]t is improper for a judge to withdraw from a case where [there is a] mere suggestion that the judge is disqualified unless the alleged cause of recusal is known by him to exist and is shown to be fact." The court also stated that disqualification "on the grounds of appearance of bias" must be based on an "objectively reasonable" belief that the proceedings would be unfair. The judge concluded that it was "well within the guidelines of ethical conduct to maintain the status quo without prejudice to any of the parties." The court reasoned:

> The application before the Court in 1999 and 2000 concerned the plaintiff's violation of defendant's rights awarded to her under the dual judgment of divorce and subsequent enforcement orders. Each matter was entered after oral argument in open Court on enforcement of the plaintiff's obligations to the defendant. The plaintiff was found in violation of defendant's clearly defined rights awarded to her by the dual judgment of divorce and subsequent enforcement orders prior to Ms. Miller's clerkship.

> The Superior Court Appellate Division [on an appeal] entered its decision November 1, 2000. More than a year later and after completion of Miss Miller's clerkship, the parties entered into a consent order on December 14, 2001 resolving the issues remaining on remand from the Appellate Division, as well as other issues and the issue of one year and eight months outstanding warrant for plaintiff's arrest.[2]

> . . . .

> The rules are clear that substantial involvement is the standard, and substantial is defined as making a decision regarding a matter of substance.

> Ms. Miller described her primary duties as a law clerk and none of which come near or within making a decision regarding a matter of substance. It is also unquestioned that only the judge makes a decision in any matter and it's also unquestioned that the post-judgment pleadings filed and submitted to the Court are public records and in no way can be classified as confidential information. Rule of Professional Conduct 1:11E.

> It is clear that a former law clerk has no special or intimate knowledge in the current post judgment matter before this Court. Under both Rule of Professional

---

[2] The record before us includes a "consent order resolving all issues on enforcement of dual judgment of divorce and remand" entered on December 14, 2001.

Conduct 1:11A and 1:12A, Miss Miller is not disqualified as representing the firm's client, the defendant herein.

The judge also analyzed disqualification pursuant to RPC 1:11(b). He reasoned that:

The law clerk's duties in general and Miss Miller's, in particular, does not include personal or substantial nor confidential participation in assisting the judge. Miss Miller's clerkship commenced after the Court made its decision and entered the dual judgment of divorce. It was during the period of Miss Miller's clerkship that the plaintiff did not comply with the judgment of divorce and the defendant filed enforcement motions to enforce her rights awarded under the judgment.

It is significant that the issues before the Court were enforcement issues post-judgment decided by the court for judgements entered prior to Ms. Miller's law clerkship. The issue presently before the [] Court for as a result of the [February] 10, 2002 order of the Court is separate and distinct post-judgment issue of modification of alimony unrelated to the enforcement issues before the Court during Miss Miller's law clerkship.

Applying the ordinary knowledgeable person standard to these facts, it is clear that there must be something more than a fanciful possibility. Using the reasonable basis standard, the Court finds there is no appearance of impropriety by Miss Miller's representing of her firm's client, Miss Schait.

The court also noted the "great harm" inflicted upon the "affected client as well as the judicial process," and concluded that the "history of expenditure of tremendous amount of time and resources by and on behalf of the defendant by her attorneys ... weighs in favor of the defendant's right to counsel of her choice, even if there was an appearance of impropriety."

## II.

While we must give deference to the Family Part's fact-finding when supported by "adequate, substantial, [and] credible evidence," *Cesare v. Cesare*, 154 *N.J.* 394, 412, 713 *A.*2d 390 (1998), the matter before us deals with essentially uncontested facts and a legal issue. In that context, we are asked to direct the trial judge to recuse himself, and to "enter an Order disqualifying the Gomperts' firm from continuing representation, the Donahue firm from resuming representation, and disqualifying Ms. Miller from representing [defendant] in this case regardless of where employed in the future."

## A.

Plaintiff argues that the judge's "recusal is appropriate due to the clear violation of the Rules of Professional Conduct by counsel for the defendant, and the consequent inability of this Court to monitor compliance in an effort to obviate any appearance of impropriety." Plaintiff also maintains that the judge violated *Rule* 1:12–1(f), which is the "catch-all" clause for the requirement of a judge's recusal.

Defendant contends that "none of the factors as cited by R. 1:12–1 have been met." Defendant accuses plaintiff of attempting to "judge shop" because plaintiff's previous appeals to this court were "adverse to the plaintiff and adverse to the fullest extent possible." Defendant argues the application is a strategic move by plaintiff to remove the trial judge. Defendant also states that discovery and depositions are complete and that her present counsel is prepared to handle the matter.

It is clear that a judge who has handled a case cannot be forced out by the hiring of his former law clerk. Any other conclusion would promote the hiring of associates merely to disqualify a judge, a policy no judicial system can tolerate. *See Hamid v. Price Waterhouse*, 51 *F.3d* 1411, 1415–17 (9th Cir.1995). In any event, we find no violation of *R.* 1:12–1 which provides:

The judge of any court shall be disqualified on the court's own motion and shall not sit in any matter, if the judge

(a) is by blood or marriage the second cousin of or is more closely related to any party to the action;

(b) is by blood or marriage the first cousin of or is more closely related to any attorney in the action. This proscription shall extend to the partners, employers, employees or office associates of any such attorney except where the Chief Justice for good cause otherwise permits;

(c) has been attorney of record or counsel in the action; or

(d) has given an opinion upon a matter in question in the action; or

(e) is interested in the event of the action; or

(f) when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so.

*See also N.J.S.A.* 2A:15–49, –50; *New Jersey Code of Judicial Conduct,* Canon 3(C).

It has been stated that "fear" that a court may show deference to a party, or will not act "impartially" because of association with a former law clerk, is "absolutely unwarranted." *Marxe v. Marxe,* 238 *N.J.Super.* 490, 498, 570 *A.*2d 44 (Ch.Div.1989). We do not subscribe to that view where the law secretary worked on the matter. *Cf. In re Violation of Rule 50,* 78 *F.3d* 574 (Fed.Cir. 1996); *Monument Builders of Pennsylvania v. Catholic Cemeteries Ass'n Inc.,* 190 *F.R.D.* 164 (E.D.Pa.1999). *See also* RPC 1.12(a). However, as we see it, the focal issue is not the recusal of one who properly heard the matter over a period of time. Rather, the question relates to the ability of the firm which hired the former law secretary to remain in the case, and on that question the Rules of Professional Conduct must be dispositive.

## B.

█ Plaintiff argues that the firms with which Ms. Miller was associated did not comply with the ethical requirements for employment of former law secretaries, as set forth in *Marxe v. Marxe, supra,* and that the firms must be disqualified to avoid the appearance of impropriety. Plaintiff argues that "Ms. Miller's objectivity must be examined where she was substantially involved with motions on this case during her tenure as a law clerk ... while at the same time she was interviewing for a position at the adverse firm." Plaintiff further argues that the "failure of the Donahue, Braun, Hagan, Klein, & Newsome firm and Ms. Miller to follow prescribed standards when hiring a judicial law clerk, worked an unfair prejudice on Mr. Comparato who was unaware that the Judge's law clerk was interviewing with and had accepted employment with the adverse firm."

Defendant argues that Ms. Miller's participation as a law clerk in this case, similar to *Marxe,* was not "personal or substantial." Defendant notes that both of Ms. Miller's certifications set forth that "she has no recollection of any substantial dealings" with the

case during her clerkship.[3]   Defendant further argues that the pending post-judgment application cannot be classified as containing confidential information, and does not relate to any proceedings on which she may have worked as a clerk.   Defendant notes that the matter before the court is a request to modify alimony, which is a completely separate issue than the issues adjudicated before the trial court during Ms. Miller's clerkship.   As already noted, defendant further points out that Mr. Braun has been involved in this case since the defendant's divorce and it "would be a grave injustice" to defendant to have to hire new counsel on the eve of an evidentiary hearing.

RPC 1.11(a) precludes a former government attorney from representing

> a private client in connection with a matter (1) in which the lawyer participated personally and substantially as a public officer or employee, (2) about which the lawyer acquired knowledge of confidential information as a public officer or employee, or (3) for which the lawyer had substantial responsibility as a public officer or employee.

RPC 1.11(b) provides that:

> An appearance of impropriety may arise from a lawyer representing a private client in connection with a matter that relates to the lawyer's former employment as a public officer or employee *even if the lawyer did not personally and substantially participate in it, have actual knowledge of it, or substantial responsibility for it.*   In such an event the lawyer may not represent a private client, but a firm with which that lawyer is associated may undertake or continue representation if: (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom, (2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.   (Emphasis added.)

RPC 1.12(a) further provides that:

> Except as stated in paragraph (c), a lawyer *shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a* judge or other adjudicative officer, arbitrator, or *law clerk* to

---

[3] We directed the filing of a supplemental "affidavit or certification from the appropriate person or persons indicating when Ms. Miller interviewed for a position at Donahue, Braun, Hagan, Klein & Newsome, P.C., and the date on which she accepted a position with that firm."

such a person, unless all parties to the proceeding consent after disclosure. (Emphasis added.) [4]

In *Marxe,* the Family Part applied these rules to a situation in which the trial judge's law clerk accepted a position at a firm that had several pretrial applications pending before the court during the clerkship. The judge noted that the clerk did not have "particular or substantial" participation in "any one matter over another," given "the volume of litigation dealt with on a daily basis" in his court, and was exposed only to matters of "public record." *Marxe, supra,* 238 *N.J.Super.* at 493–94, 570 *A.*2d 44. The court also noted that pending litigation was not discussed at the law clerk's interviews with the firm, and that the former clerk had "absolutely no involvement with the *Marxe* case" at the firm. *Id.* at 492–493, 570 *A.*2d 44. The court concluded that "as long as the attorney is not involved in any way with the matter at hand, it is within the ethical guidelines established for attorneys of the State of New Jersey for [the firm] to continue representation of Mr. Marxe." *Id.* at 494, 570 *A.*2d 44.[5] The judge specifically found that the former law clerk, who performed duties similar to Ms. Miller in the Family Part, had no "personal or substantial" connection with the matter during the clerkship. *Id.* at 497, 570 *A.*2d 44.

Given the certifications of Ms. Miller concerning her non-involvement in the matter as a law clerk, as well as the judge's similar findings, we cannot say that Ms. Miller had a "personal" or "substantial" involvement in this matter as a law clerk to a judge who did. Accordingly, RPC 1.12(a) does not prevent her personal involvement in the present post-judgment proceedings filed more than a year after her clerkship ended and following entry of an

---

[4] RPC 1.12(c) is not applicable.

[5] Although the judge found that the former clerk "did not participate personally and substantially" in the matter, *ibid.,* he referred to RPC 1.11 and the "screening" approach apparently because the clerk was in practice for less than a year. *Id.* at 494, 97, 511 *A.*2d 1171.

order that settled the issues that remained unresolved over a year after the clerkship ended.

We recognize that the "appearance of impropriety" rule remains for consideration even if Ms. Miller did not "personally and substantially participate" in handling the matter as a law secretary. *See* RPC 1.11(b). But even if that rule applies to former law clerks, as opposed to governmental advocates, given the permissive wording of RPC 1.12(a) in the absence of "personal" and "substantial" involvement, we decline to find a disqualification under the "appearance of impropriety" standard, in light of the undisputed facts of this case. *See* Michels, *New Jersey Attorney Ethics* (Gann 2002) § 22:5. "Report of the New Jersey Supreme Court Committee on the Model Rules of Professional Conduct," 112 *N.J.L.J.* (July 23, 1983), supp. at 7–8. In *Matter of Tenure Hearing of Onorevole*, 103 *N.J.* 548, 511 *A.*2d 1171 (1986), the Supreme Court concluded that RPC 1.12(a) applied to whether a former Administrative Law Judge could subsequently handle a matter in private practice, and found no bar. The Court nevertheless also considered the impact of RPC 1.11. However, given the fact that RPC 1.12(a) does not bar subsequent participation in a matter when there was no "personal" or "substantial" involvement as a clerk, the clerkship alone cannot serve as a basis for finding "an appearance of impropriety" under RPC 1.11(b). Accordingly, we find that Ms. Miller can participate in the present proceedings and need not consider whether any impermissible involvement by her affects the firm's continued participation.

Our disposition promotes good judicial policy, as well as ethical responsibilities, because it would not impair the marketability of law clerks who are familiar with practice and substance before the courts and, in turn, would not inhibit recent law school graduates from taking clerkships which could affect their marketability.[6]

---

[6] There may, of course, be cases on which the clerk worked substantively, such as during a trial, where the nature of the case or post-clerkship proceedings

III.

The order under appeal is affirmed.

might require disqualification of the firm which he or she joined or at least that
he or she be "screened." *Cf. Ross v. Canino*, 93 *N.J.* 402, 461 *A.2d* 585 (1983);
*Steel v. Gen. Motors Corp.*, 912 *F.Supp.* 724, 739–41 (D.N.J.1995). *See also
Dewey v. R.J. Reynolds Tobacco Co.*, 109 *N.J.* 201, 215, 536 *A.2d* 243 (1988) (firm
not disqualified under appearance of impropriety rule when attorney from firm
representing one party joins the other).