848 A.2d 770

RICHARD COMPARATO, PLAINTIFF–APPELLANT,
v. ROCHELLE SCHAIT (FORMERLY KNOWN AS
COMPARATO), DEFENDANT–RESPONDENT.

Argued March 2, 2004—Decided June 2, 2004.

*Patricia M. Barbarito* argued the cause for appellant (*Einhorn, Harris, Ascher, Barbarito, Frost & Ironson,* attorneys; *Bonnie C. Frost,* of counsel and on the brief).

*Neil S. Braun* argued the cause for respondent(*Gomperts & Braun,* attorneys; *Mr. Braun* and *Priscilla A.J. Miller,* on the brief).

Justice VERNIERO delivered the opinion of the Court.

In this matrimonial matter, plaintiff seeks to disqualify the trial judge as well as defendant's present and prior counsel, including an attorney who formerly served as the judge's law clerk. The trial court and Appellate Division each denied plaintiff's requested relief. We affirm, except that we modify the Appellate Division's judgment by directing that the former law clerk screen herself from any further involvement with this litigation.

## I.

Plaintiff Richard Comparato filed a complaint for divorce against defendant Rochelle Schait in May 1995. The parties tried the case before Judge James B. Convery from September 1997 to May 1998. In December 1998, the judge issued a fifty-two page opinion setting forth factual findings, granting the parties a divorce, and providing for alimony and equitable distribution of the marital assets. In the course of his opinion, the judge found that plaintiff had dissipated certain marital assets purportedly to deprive defendant of her equitable share.

The trial court received several post-judgment applications. Specifically, defendant filed a motion to enforce litigant's rights in August 1999. Judge Convery heard oral argument on that motion that same month. On September 1, 1999, consistent with the usual start-date of state law clerks, Priscilla A. Jakubowski (now Priscilla A.J. Miller) began a judicial clerkship with Judge Convery. Shortly thereafter, on September 24, 1999, the judge granted

defendant's motion, directing plaintiff to comply with certain financial obligations.

In November 1999, defendant filed a second motion to enforce litigant's rights. The trial court granted that motion on February 10, 2000, finding plaintiff in contempt for his failure to comply with the final divorce judgment and the September 24, 1999, order. Similarly, in April 2000, Judge Convery issued a bench warrant for plaintiff's arrest stemming from his alleged failure to abide by the divorce judgment and the court's February 10, 2000, order. In July 2000, plaintiff filed a motion to vacate or stay the prior enforcement order and bench warrant. The judge denied that motion in September 2000.

During the divorce trial and ensuing appeals, Neil Braun of Donahue, Braun, Hagan, Klein & Newsome represented defendant. In the summer of 2000, during the final months of her clerkship, Miller interviewed for a position at the Donahue firm to commence at the completion of the clerkship. The judge was informed that Miller had accepted that position. Miller's one-year judicial clerkship ended on August 31, 2000, and she commenced employment with the Donahue firm on September 11, 2000.

Plaintiff appealed the original divorce judgment, claiming that Judge Convery had "abused his discretion ... to the fullest extent possible for perceived marital misconduct[,]" and that "[v]irtually every issue determined by the trial judge was not only adverse to plaintiff but adverse to the fullest extent possible *and well beyond* the available assets in the case." The Appellate Division affirmed most of the trial court's conclusions, remanding for further review only those issues concerning equity in the marital home and distribution of credit card debt. In addition, the panel found no improper conduct on Judge Convery's part, noting that "the trial judge did not display bias by requiring plaintiff to recognize his financial obligations."

Plaintiff filed a motion for reconsideration, which the Appellate Division denied in December 2000. The parties then resolved the

outstanding enforcement issues in addition to the issues left open by the Appellate Division's remand.

In January 2002, Neil Braun left the Donahue firm to form Gomperts & Braun. A month later, in February 2002, the Donahue firm filed a motion for an increase in alimony on defendant's behalf, asserting change of circumstances. After considering the motion and determining that "defendant [had] made a prima facie showing of change of circumstances[,]" Judge Convery directed discovery and ordered a hearing concerning the alimony question. Plaintiff filed a motion for leave to appeal before the Appellate Division, which denied the motion.

Miller departed the Donahue firm to work at the Gomperts firm in April 2002. In July 2002, Braun filed a substitution of counsel, resuming his representation of defendant. Also that month, according to Miller, she had contact with defendant's matter. Specifically, she reviewed plaintiff's notice of motion for leave to appeal in respect of the alimony issue. Miller drafted an appellate brief on behalf of defendant in response to that motion, which, as noted above, the Appellate Division ultimately decided in defendant's favor.

Miller next had contact with defendant's matter in August 2002 when she assisted in scheduling depositions in connection with the post-judgment alimony application. In September 2002, she made discovery requests of plaintiff and corresponded with the trial court, stating defendant's position with regard to plaintiff's stipulation of his ability to pay alimony. Miller met defendant for the first time as her attorney on September 5, 2002, and subsequently met with defendant to update her Case Information Statement.

Miller attended plaintiff's deposition on September 24, 2002. During a break in the deposition, Miller mentioned to plaintiff's counsel that she had been Judge Convery's law clerk. The following week plaintiff's counsel wrote to the judge, requesting that he recuse himself based on the alleged conflict created by having Miller, his former clerk, assist in defendant's representation. The judge indicated that he would treat plaintiff's letter as a

formal motion to be heard after the parties exchanged briefs. Defendant's counsel responded in a letter brief dated October 15, 2002, arguing that no ethical breach had occurred but nonetheless proposing to screen Miller from further involvement to address "any potential appearance of impropriety due to plaintiff's concerns[.]"

Around the same time, defendant testified at a deposition that at some juncture she became aware that Miller had clerked for Judge Convery. Defendant noted, however, that she had no meetings or discussion with Miller while Miller was employed with the Donahue firm. When defendant was asked whether she had discussed with Miller "how [Judge Convery] thinks [or] analyzes things," she responded, "No."

Miller stated in a certification that, although her duties as a law clerk included performing research for Judge Convery and attending conferences held by the judge in chambers, she "primarily was responsible for the court's motion calendar each motion day." In that respect, she received motions filed with the court, set and adjourned return dates for those motions, and summarized the pleadings for the court. Miller also certified that

> [w]ith regard to the Comparato matter, I have no specific recollection of having any contact with this file other than my routine involvement as a law clerk to the extent that I reviewed applications which were made to the court, attended oral arguments, and prepared orders, as with all motions heard before Judge Convery. I was by no means privy to any confidential information regarding this matter and had no more contact with this file than any other matter pending during my clerkship.

After hearing argument, Judge Convery declined to recuse himself. The court also denied plaintiff's motion to disqualify the attorneys at the Donahue and Gomperts firms, including Miller. In his oral decision, the judge essentially corroborated Miller's description of her duties as a law clerk. The court stated: "[Ms.] Miller dealt with such duties, including keeping track of many motions submitted to the [c]ourt every week for review." The judge also found that a former clerk such as Miller would have "no special or intimate knowledge in the current post-judgment matter before this [c]ourt."

Plaintiff moved for leave to appeal before the Appellate Division, which granted the motion and then affirmed the trial court's denial of plaintiff's application in all respects. *Comparato v. Schait,* 362 *N.J.Super.* 113, 827 *A.*2d 306 (2003). We granted plaintiff's motion for leave to appeal to this Court. 178 *N.J.* 248, 837 *A.*2d 1091 (2003). After conducting a plenary hearing, the trial court resolved defendant's underlying request for increased alimony, awarding her that increase in an order dated January 5, 2004. Plaintiff appealed the alimony question to the Appellate Division in an application now before that court. We granted plaintiff's motion staying the trial court's January 5, 2004, order.

## II.

We will review the conduct at issue in this case based on the ethics rules in effect at the time the conduct occurred. *See In re Yaccarino,* 101 *N.J.* 342, 384 n. 14, 502 *A.*2d 3 (1985) (observing that newly adopted ethics rules do not apply to charges predating them). In that respect, we focus primarily on *Rule of Professional Conduct (RPC)* 1.12(a), which provided during the period relevant to this appeal: "[A] lawyer shall not represent anyone in connection with a matter in which the lawyer participated *personally and substantially as a* judge or other adjudicative officer, arbitrator, or *law clerk* to such a person unless all parties to the proceeding consent after disclosure." (Emphasis added.)

The rule does not define "personally and substantially," and this Court has not had the occasion to examine that phrase in these circumstances. In *Marxe v. Marxe,* 238 *N.J.Super.* 490, 570 *A.*2d 44 (1989), the Chancery Division held that an attorney, who had clerked for the judge during a period in which the court decided several motions in a matrimonial case, had not participated personally and substantially in that case for purposes of *RPC* 1.12(a). The court noted several factors as contributing to its decision that there was no ethical violation. For example, the law clerk's primary duties included monitoring the motions for each

motion cycle and summarizing the pleadings for the judge's review. *Id.* at 493, 570 *A.*2d 44.

The *Marxe* court also noted that the legal papers submitted to the judge were considered public documents, suggesting that the law clerk was not privy to any confidential information about the case. *Id.* at 494, 570 *A.*2d 44. The court observed that it would be unreasonable to suggest that a law clerk substantially participates in any one matter when there is a significant volume of litigation being handled by a judge on a daily basis. *Id.* at 493, 570 *A.*2d 44. The court further observed that "[i]t must be unquestioned that at no time does anyone other than the judge ever decide *any* issue." *Id.* at 493–94, 570 *A.*2d 44.

Other than the reported decision below, *Marxe* appears to be the one published New Jersey decision directly addressing the language of the rule at issue in this case. Michels, *New Jersey Attorney Ethics* § 22:5 at 518–19 (2004) (discussing "substantial participation" under *RPC* 1.12(a) and citing no case law other than *Marxe* and Appellate Division's *Comparato* decision). As such, *Marxe* represents the only case law to which Miller might have turned for guidance. From that perspective, fairness requires that we evaluate the former law clerk's conduct principally on the basis of the rule's text as construed by *Marxe*. *See Borteck v. Riker, Danzig, Scherer, Hyland & Perretti,* 179 *N.J.* 246, 259, 844 *A.*2d 521 (2004) (stating in case involving law firm's retirement agreement that "it would be unfair to hold [firm] to requirements or standards not embodied in" rule governing such agreements).

In so doing, we are satisfied that Miller's involvement as a law clerk with earlier aspects of this litigation did not rise to the level of "personal and substantial" participation as the *Marxe* court interpreted that phrase. Defendant's motions before Judge Convery during Miller's clerkship consisted mainly of efforts to enforce the original divorce judgment (which the court entered prior to Miller's clerkship). Plaintiff's motion essentially was to stay that enforcement effort. Thus, the gist of the litigation at that juncture was procedural as opposed to substantive in nature. We

have no basis to conclude that Miller's involvement was other than what she describes in her certification, namely, that she had calendared the motions filed during her tenure and performed other related ministerial tasks.

Miller also certified that as a law clerk she was not privy to any confidential information regarding the *Comparato* matter. Judge Convery basically corroborated that assertion. Under those circumstances, we find no reason to disqualify the entire Donahue and Gomperts firms. (Prior to 2004, case law, rather than the language of *RPC* 1.12, extended the disqualification of former clerks to the firms employing them. Michels, *supra,* § 25:3–4 at 542–43. The current rule is explicit in that regard, but also makes clear that proper screening of such clerks can avoid firm-wide disqualifications. *Ibid.*) In short, we are satisfied that Miller's limited involvement as a law clerk with the mainly procedural motions described above does not warrant the broad disqualification requested by plaintiff.

■ Although we generally agree with *Marxe's* analysis of the "personal and substantial" question as applied to this case, there is one aspect of that analysis that we do not embrace. *Marxe, supra,* observed that judges typically address numerous questions during the course of the year and "that at no time does anyone other than the judge ever decide *any* issue." 238 *N.J.Super.* at 493–94, 570 *A.*2d 44. Standing alone, that observation is entirely accurate. We disagree with it only to the extent that it suggests that, because a judge has decided an issue as part of a crowded docket, his or her law clerk cannot be viewed as having "substantially" participated in that decision. That a judge independently has rendered a decision in one of many cases does not foreclose a conclusion that his or her law clerk participated substantially in the matter within the meaning of *RPC* 1.12(a).

■ Whether such participation has occurred ultimately depends on the totality of circumstances in a given case. Relevant to the inquiry is whether the law clerk was involved in the case beyond performing ministerial functions or merely researching

general legal principles for the judge. Conduct rising to the level of "personal and substantial" participation would involve a substantive role, such as the law clerk recommending a disposition to the judge or otherwise contributing directly to the judge's analysis of the issues before the court. Based on the nature of the motions presented or pending during Miller's clerkship, as well as her certified statements, we are persuaded that the "personal and substantial" test has not been satisfied.

We need not engage in an extended discussion of the "appearance of impropriety" rule, *RPC* 1.11(b), in existence during the period relevant to this case and arguably applicable to law clerks. Suffice it to say that we agree with the Appellate Division that, in this narrow context, "given the permissive wording of RPC 1.12(a) in the absence of 'personal' and 'substantial' involvement, we decline to find a disqualification under the 'appearance of impropriety' standard, in light of the undisputed facts of this case." *Comparato, supra,* 362 *N.J.Super.* at .123, 827 *A.*2d 306. Even assuming that a legitimate contrary conclusion could be reached, it effectively would be mooted by our accepting defendant's proposal to screen Miller from continued involvement in this matter.

After completing her clerkship and joining a private firm, the former law clerk in *Marxe* screened herself from the matrimonial matter that was the focus of that case. She did so presumably out of an abundance of caution and to remove any appearance of a conflict. *Marxe, supra,* 238 *N.J.Super.* at 497, 570 *A.*2d 44. Defendant's counsel here, as early as October 15, 2002, suggested the same mechanism, not as an admission that an ethical violation had occurred, but to eliminate any potential argument in that respect. We concur. Accordingly, Miller shall screen herself from any further involvement with this litigation. The result is that we affirm the Appellate Division's judgment in respect of the Donahue and Gomperts firms and modify it in respect of Miller's continued participation.

Plaintiff argues in essence that Miller's clerkship allowed her to acquire information that the Gomperts firm could have used or

still might use to its advantage, making it too late to employ a screening mechanism. We disagree. As just indicated, Miller's contact as a law clerk with the litigation's earlier components was insufficient to rise to the "personal and substantial" level. In addition, those components, which focused on enforcement issues related to the divorce judgment, were resolved by a consent order accepted by the trial court. In other words, they were distinct from what later became the increased-alimony question. We thus are not persuaded that the Gomperts firm inappropriately possessed or possesses information that it could have used or can use against plaintiff during this current phase of litigation.

Similarly, ethical infractions must be more than merely speculative to warrant the blanket disqualification sought here. In that regard, we recently have explained:

> Our evaluation of an actual or apparent conflict, or of an appearance of impropriety, "does not take place 'in a vacuum,' but is, instead, highly fact specific." *In re Opinion 653*, 132 *N.J.* 124, 132, 623 *A.2d* 241 (1993) (quoting *In re Opinion 415*, 81 *N.J.* 318, 325, 407 *A.2d* 1197 (1979)). In that respect, the Court's attention "is directed to 'something more than a fanciful possibility.' " *Ibid.* (quoting *Higgins v. Advisory Comm. on Prof'l Ethics*, 73 *N.J.* 123, 129, 373 *A.2d* 372 (1977)). To warrant disqualification in this setting, the asserted conflict "must have some reasonable basis." *Ibid.* (internal citation and quotation marks omitted).
> [*State v. Harvey*, 176 *N.J.* 522, 529, 826 *A.2d* 597 (2003).]

As important, we repeat that our directing Miller to screen herself is intended not as a remedy to cure an ethical breach but as a prophylactic measure to avoid any future question that might emerge in this contentious case if Miller continued to participate in defendant's representation. After almost two years of litigating these ethical questions, both sides benefit from closure, permitting them to concentrate on the pending appeal of the alimony issue before the Appellate Division. *See Dewey v. R.J. Reynolds Tobacco Co.*, 109 *N.J.* 201, 218, 536 *A.2d* 243 (1988) (observing "that disqualification motions are often made for tactical reasons, but that even when made in the best of faith, such [disqualification] motions inevitably cause delay in the underlying proceedings") (internal quotation marks and citation omitted) (alteration in original).

### III.

 The remaining question regarding whether Judge Convery should recuse himself warrants only a brief discussion. In his opinion below, Judge Stern succinctly analyzed the recusal question, *Comparato, supra,* 362 *N.J.Super.* at 119–20, 827 *A.*2d 306, an analysis with which we substantially agree. Judge Convery presumably formed the bulk of his impressions regarding this litigation after he had presided over the initial trial and entered the divorce judgment, all before Miller commenced her clerkship. There is nothing in the record to suggest that Miller's subsequent representation of defendant has caused the judge to be predisposed to rule against plaintiff on any future question. Nor will we assume that such predisposition exists merely because plaintiff subjected the judge to a recusal motion. *Cf. Amoresano v. Laufgas,* 171 *N.J.* 532, 555, 796 *A.*2d 164 (2002) (declining to assume judicial bias against litigant "simply because the trial court was the subject of disparaging comments" by litigant himself).

We further observe that mandating the recusal of the trial judge and having a different court decide the alimony question, in addition to disqualifying all attorneys from the Donahue and Gomperts firms, would work a hardship on the system as a whole and on defendant in particular. *See Rohm & Haas Co. v. American Cyanamid Co.,* 187 *F.Supp.*2d 221, 226 (D.N.J.2001) (observing that "motions to disqualify can have [ ] drastic consequences"). Such a remedy at this late juncture would require a potentially significant expenditure of public and private resources as a new judge and counsel transitioned into their respective roles. We would not hesitate to incur such costs if upholding the integrity of our ethical rules required it. For the reasons already expressed, such action is not warranted in this case.

We also note that this Court recently enacted revisions to the rules governing attorney conduct, including *RPC* 1.12. Michels, *supra,* § 22:5 at 518. As amended, the rule explicitly establishes a method for law firms to screen former law clerks in their employ from matters with which they might have been "personally and

substantially" involved during their respective clerkships. *RPC* 1.12(b). As indicated above, that provision did not exist as part of *RPC* 1.12 during the period relevant to this litigation. Because the term "personal and substantial" is inexact by design, its application in some cases can be open to reasonable debate. In view of that reality, we trust that our former law clerks and the firms hiring them will not hesitate to employ the screening mechanism of *RPC* 1.12(b) to avoid the ethical disputes that sometimes materialize even when attorneys in good faith attempt to comply with existing rules.

## IV.

Our dissenting colleagues essentially echo arguments made by plaintiff that we already have addressed. We add the following. The mandate of *RPC* 1.12(a) is not triggered by any or all contact that a former law clerk might have had on a matter. Rather, it is triggered by contact that was "personal and substantial." The dissenters effectively would eliminate that threshold standard such that even slight or what we might consider non-substantive involvement with a matter would expose the law clerk to an ethical breach. We believe that it would be unfair to hold Miller and the Gomperts firm to a standard that simply was not in effect during the period relevant to this litigation.

Similarly, the present rule does not reflect the dissenters' "bright-line" approach. On its face, the "personal and substantial" standard evinces a more flexible or pragmatic approach, recognizing that certain rules can be applied equitably only when the Court considers the totality of circumstances surrounding them. *See In re Advisory Comm. on Prof'l Ethics,* 162 *N.J.* 497, 509, 745 A.2d 497 (2000) (Stein, J., dissenting) (observing that RPCs "are not to be applied in a vacuum, but rather should be interpreted and applied pragmatically") (internal quotation marks and citation omitted). The dissenters themselves seem to want to preserve some measure of flexibility when they indicate that they would except a law clerk's "ministerial" tasks from the mandate of *RPC*

1.12. Consistent with our analysis, we agree that ministerial tasks do not fall within the rubric of "substantial" involvement. We disagree with how our dissenting colleagues would construe "ministerial" action for purposes of this disposition.

Moreover, the burden of our colleagues' asserted remedy would fall disproportionately and unfairly on defendant. She filed the underlying increased-alimony application in February 2002 and litigated it for two years before the trial court ruled in her favor. Disqualifying the Gomperts firm would require a new law firm to educate itself on that extensive history, which possibly could delay the pending appeal before the Appellate Division. It also would rob defendant of the services of Neil Braun, her chosen counsel who, except for a relatively brief period, has represented defendant since the litigation's start. We repeat our view that such inequitable results are not warranted by the limited nature of Miller's tenure with the judge.

Nor do we accept the dissenters' suggestion that our screening Miller amounts to a concession that a breach has occurred or represents an inconsistent approach. We do no more than codify in a judicial decision what would have been the status quo had plaintiff or the trial court accepted defendant's proposal to screen Miller when plaintiff first raised his objections. Our disposition in that respect reflects how the system can benefit when attorneys offer accommodations to resolve disagreements in ways that are balanced and fair without necessarily admitting a violation. In sum, we see no harm or flaw in codifying defendant's initial proposal in the narrow circumstances here.

Lastly, we reiterate that our holding is influenced in large measure by the text of *RPC* 1.12 in existence at the time of Miller's conduct. We are open to reviewing that text to determine whether the system would be better served by a revised rule. Accordingly, we direct our Professional Responsibility Rules Committee to review *RPC* 1.12 to determine whether it embodies an appropriate standard. For that purpose, the Committee should not feel constrained by any view expressed here or in prior case

law, but rather should consider whether the rule's wording should be retained or revised in light of all considerations that it deems relevant. "Until the Committee returns with its recommendations and until we enact revisions to *RPC* [1.12], if any, . . . firms [and individual attorneys] should be guided by existing case law as supplemented by this opinion." *Borteck, supra,* 179 *N.J.* at 260, 844 *A.*2d 521.

## V.

As modified, the judgment of the Appellate Division is affirmed.

Justice ALBIN, dissenting.

As a law clerk, Priscilla Miller assisted a family law judge who decided a motion that held plaintiff in contempt for failure to comply with a final divorce judgment and who issued a bench warrant for plaintiff's failure to abide by an order of the court. After concluding her clerkship, Ms. Miller entered the private practice of law with a firm that represented defendant in that case. At some later point, Ms. Miller assisted in the representation of defendant in the very case on which she did substantive work during her judicial clerkship. I cannot conclude, as does the majority, that there is nothing wrong with this picture.

The majority sanctions Ms. Miller's involvement in defendant's case by concluding that she did not participate "personally and substantially" as a law clerk in that matter. Such a narrow interpretation of what it means for a law clerk to "personally and substantially" participate in a case, I fear, will undermine the appearance of judicial impartiality and the public's confidence in the fair administration of justice. I would give clear direction to the bar and to our judges that a law clerk, who digests or summarizes a motion, a brief, or a transcript; conducts research; prepares an order; or performs other substantive work on a case for a judge, has participated "personally and substantially" in that matter.

That Ms. Miller "had no more contact with this [matter] than any other matter pending during [her] clerkship," does not excuse her from abiding by the disqualification rule. See *RPC* 1.12. The number of matters on which Ms. Miller worked as a law clerk is not an indication that she did not substantially participate in assisting the judge in many, if not most, of those matters. To the extent that Ms. Miller participated in a judicial matter, she should not, after her clerkship, represent one of the litigants in that same matter. It is not surprising that Ms. Miller has "no specific recollection of having any contact with this file other than [her] routine involvement as a law clerk." Every year, a high volume of cases pass through the family court, and the passage of time undoubtedly will diminish the law clerk's ability to remember precisely what she did in any one case. However, each one of those cases is significant to the party contesting such important issues as custody of children and the division of marital assets. One party to the case should not be disadvantaged or feel disadvantaged because the other party has retained an attorney who, while a law clerk, assisted the judge in that very matter.

The majority relies on the Law Division case of *Marxe v. Marxe*, 238 *N.J.Super.* 490, 570 *A.2d* 44 (1989). Unlike this case, the law clerk in *Marxe* was screened from the case in which she had participated as a law clerk. *Id.* at 497, 570 *A.2d* 44. Had Ms. Miller's law firm taken the same precautionary steps as the law firm in *Marxe*, it is highly unlikely this case would be before us.[1] I do not find persuasive the rather constricted view in *Marxe* of what it is for a law clerk to "personally and substantially" partici-

---

[1] Paragraph (b) of *RPC* 1.12, was amended effective January 1, 2004, to provide expressly that a law firm may "undertake or continue representation in [a] matter," despite its association with a lawyer disqualified by paragraph (a), if:

(1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of this Rule.

[*RPC* 1.12(b).]

pate in a case. The *Marxe* court concluded that the law clerk had minimal involvement because her duties were limited to summarizing pleadings for the judge's review. *Id.* at 493, 570 *A.*2d 44. For anyone who has ever served as a law clerk or a judge, it is clear that even summarizing or digesting a brief, a transcript of testimony, or moving papers may involve subjective, editorial judgments filtered through the particular value system of the clerk. In light of the significant volume of litigation before a family law judge, the *Marxe* court suggested that a law clerk will not have substantial involvement in any one matter. *Ibid.* However, substantial involvement is not defined by the time spent on the matter but the nature of the participation of the clerk in that matter. A family law judge is substantially involved in each of the cases over which that judge presides, however little time is spent on any one case and however many cases may be decided in a day. That same concept applies to the law clerk. Last, although I agree with the *Marxe* court's axiomatic conclusion that "at no time does anyone other than the judge ever decide *any* issue," *id.* at 493–94, 570 *A.*2d 44, that surely cannot mean that a law clerk does not "personally and substantially" participate in a case, simply because the clerk is not the decision maker.

I would broadly construe the term "personally and substantially" to disqualify any law clerk from later representing a litigant in a case on which the clerk did substantive work for a judge. Ministerial work, such as calendaring or completing a checklist of items received in a case, would not be a basis for disqualification under *RPC* 1.12. Such a bright-line rule will give guidance to law clerks in their future employment. This rule would not bar a lawyer from accepting employment with a firm representing one of the parties in a case in which the lawyer substantially participated as a law clerk. The rule only would require that, when the lawyer has substantially participated in that case as a law clerk, the lawyer be screened by the law firm from any involvement in the case. The interpretation I would give to the words personal and substantial participation would instill greater public confidence that the integrity of our judicial system will not be compro-

mised. The majority's opinion will invite further litigation to define the contours of personal and substantial participation. An aggressive party may seek to depose the law clerk and perhaps the judge to determine the precise nature of the clerk's involvement in the case. Such an intrusion into the judicial function can have only negative repercussions.

The majority concludes that Ms. Miller did not participate "personally and substantially" as a law clerk in the case, and yet requires that she be screened from any further participation as a lawyer. This inconsistent approach to the issue betrays a certain uneasiness that the majority has with the unseemly appearance of Ms. Miller representing one of the litigants in this matter.

Although I disagree with the result reached by the majority in this case, I welcome the majority's referral of *RPC* 1.12 to the Professional Responsibility Rules Committee "to determine whether [that rule] embodies an appropriate standard." I believe that my interpretation of the current rule sets "an appropriate standard" that will promote public confidence in the judiciary and the legal profession.

Because I conclude that Ms. Miller participated "personally and substantially" as a law clerk in the same case in which she is representing defendant, I would disqualify both her and her law firm from any further participation in that case. That result, although harsh for defendant who would have to find new counsel, is dictated by the need to assure litigants that our judicial system is both impartial and just. Therefore, I respectfully dissent.

Justice LaVECCHIA joins in this dissent.

*For affirmance*—Chief Justice PORITZ and Justices VERNIERO, ZAZZALI and WALLACE—4.

*For reversal*—Justices LaVECCHIA and ALBIN—2.