**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1947-12T2

P.M.,

    Plaintiff-Appellant,

v.

N.P.,

    Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

June 17, 2015

APPELLATE DIVISION

Argued March 26, 2014 — Decided June 17, 2015

Before Judges Fuentes, Simonelli and Fasciale.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0759-06.

Edward Fradkin argued the cause for appellant (Law Office of Edward Fradkin, LLC, attorneys; Mr. Fradkin, on the briefs).

Amy Sara Cores argued the cause for respondent (Cores & Associates, LLC, attorneys; Ms. Cores, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

In this appeal, plaintiff-wife argues the Family Part Judge who decided a number of post-judgment motions erred in denying her application to recuse himself. Plaintiff claims the judge's impartiality was tainted when his law clerk engaged in

employment discussions with and ultimately accepted an offer of employment from the attorney who represents defendant-husband. Plaintiff claims defendant's counsel discussed employment opportunities with the judge's law clerk during the time in which the judge was managing this contentious post-divorce motion practice.

Plaintiff also alleges the law clerk is related to the trial judge in some undisclosed degree of consanguinity, which the judge refused to clarify despite plaintiff's counsel's repeated requests. Despite the lack of specific details concerning the law clerk's relationship to the judge, plaintiff claims the law clerk accepted defense counsel's offer of employment and began working with defense counsel at the conclusion of her clerkship. Plaintiff points out that the judge also continued to preside over this case and decide the parties' outstanding post-judgment motions after the law clerk was employed by defense counsel. Plaintiff argues the combined effect of all these events created a conflict of interest or, at the very least, an appearance of impropriety requiring the judge's recusal.

Under these circumstances, plaintiff argues the trial judge erred in denying her motion to vacate orders the judge entered during the time his law clerk was engaged in employment

2                                          A-1947-12T2

discussions with defense counsel and after the law clerk began working for defense counsel's firm. Alternatively, plaintiff seeks a remand for the judge to develop a complete record addressing the ethical issues raised and to make specific factual findings and conclusions of law explaining the basis for denying plaintiff's motion seeking his recusal from this case.

After carefully reviewing the record before us, we are compelled to vacate the order denying plaintiff's motion seeking the recusal of the trial judge and remand this matter for the trial judge to make specific findings: (1) describing the judge's specific familial relationship to his former law clerk; (2) determining with particularity the timeframe of defense counsel's employment discussions with the judge's law clerk; and (3) stating the specific time defense counsel made an offer of employment to the judge's law clerk. Building upon these findings, the judge must then determine the extent to which the law clerk's employment association with defense counsel created an appearance of impropriety requiring his recusal under the standards adopted by the Supreme Court in In re Reddin, 221 N.J. 221 (2015), DeNike v. Cupo, 196 N.J. 502 (2008), and Rule 1:12-2.

I.

The parties married in 1999, had three children, and divorced in 2006. They have engaged in extensive and

contentious post-divorce motion practice, resulting in numerous court hearings followed by orders intended to dispose of the issues raised by the parties. Both parties have also been tenacious in their efforts. This is the third appeal this court has decided concerning orders entered by the Family Part adjudicating post-judgment motions.

In the first appeal, defendant challenged the decision of the Family Part denying his motion to reduce his alimony and child support obligations. P.P. v. N.P., No. A-1174-09 (App. Div. Nov. 22, 2010) (slip op. at 1-2). We affirmed the Family Part's decision to deny a reduction of defendant's support obligation "for lack of sufficient and competent documentation to establish a prima facie basis for a support modification. However, with respect to the . . . enforcement order, we remand[ed] for an ability-to-pay hearing." Id. at 2.

In the second appeal, plaintiff challenged an order "restraining her from relocating within the state," and a subsequent order "establishing parenting time." P.P. v. N.P., No. A-1246-10 (App. Div. Dec. 23, 2011) (slip op. at 1-2). We affirmed the Family Part, concluding the judge's decision with respect to the two issues raised by plaintiff was predicated on the terms of the Property Settlement Agreement (PSA). Id. at 7-8.

This third appeal relates back to our opinion disposing of the first appeal, P.P. v. N.P., supra, No. A-1174-09, in which we directed the trial court to conduct an ability-to-pay hearing to determine defendant's ability to fulfill his support obligations. On March 28, 2012, the trial court entered an order withdrawing "with prejudice" defendant's request for the ability-to-pay hearing and dismissed all outstanding issues we directed the trial court to address on remand, "except" for preserving "either party's right to seek legal fees[.]"

The record shows defense counsel transmitted this form of order entered by the court as an attachment to a letter dated March 26, 2012. In this four-page, single-spaced letter, defense counsel described in detail her client's then financial status and discussed findings allegedly made by a forensic accountant concerning defendant's financial status. Defense counsel also represented to the court that "plaintiff has been sending police officers to the residence where the children are residing to effect service. We would ask that this cease as it is detrimental to the children's welfare."

Without the benefit of a sworn certification or other competent evidence, defense counsel recounted negative comments allegedly made by the forensic accountant against plaintiff and discussed plaintiff's efforts to obtain discovery from

defendant's fiancée and other third parties who may have had knowledge of defendant's finances. Defense counsel also noted her client's wishes to settle the outstanding support issues and his "multiple efforts to try to resolve this matter." The letter ended with the following statement:

> As both parties have spent an offensive amount of money on legal fees litigating this issue, we feel that under the circumstances one side must back down. We see no end in sight. We are convinced that the plaintiff is incapable of settling these issues. While we believe that we would be ultimately be [sic] successful in proving that in 2009 our client did not have the ability to pay, at this point this does not justify the continued litigation costs. Unfortunately, the plaintiff does not agree.
>
> To that end the pending motion which addresses the various inappropriate subpoenas issued by the plaintiff is withdrawn. Again, there is no subpoena power post-judgment without a pending hearing. We further submit that the continued deposition of our client is no longer proper under the circumstances. Thus this allegedly emergent issue raised by the plaintiff's counsel last week is moot.

Defense counsel's letter triggered an immediate response from plaintiff's counsel. In his letter dated March 30, 2012, plaintiff's counsel objected to defense counsel's unilateral decision to communicate to the court and forgo a hearing that plaintiff's counsel believed was ordered by this court's decision to remand the issue of arrears to the trial court for a

6

hearing. Plaintiff's counsel also objected to defense counsel's characterization of the status of the forensic accountant's efforts to ascertain an accurate and complete understanding of defendant's financial status. Plaintiff's counsel again indicated that defendant had misrepresented to the court in 2009 his financial ability to meet his support obligations.

Plaintiff's counsel asked the court to go forward with the ability-to-pay hearing in order to establish the exact amount of arrears. Counsel also took issue with defense counsel's statement concerning the legal viability of plaintiff's subpoenas and her disclosure and alleged mischaracterization of settlement discussions. Plaintiff's counsel requested the court to admonish defense counsel for claiming to have the authority to cancel the hearing and informing third parties not to honor or respond to plaintiff's subpoenas. Despite plaintiff's counsel's efforts, the trial judge signed the form of order submitted by defense counsel.

On April 20, 2012, plaintiff filed a formal motion seeking to vacate the March 28, 2012 order. In a letter-brief in support of the motion, plaintiff's counsel argued the order was "improperly submitted" by defense counsel and "improperly entered" by the court. Plaintiff's counsel particularly emphasized that the manner in which defense counsel presented

this order to the court violated established rules of procedure codified in Rule 4:42-1, and made substantive representations without competent evidence to support them.

Plaintiff's counsel also sought the trial judge's disqualification pursuant to Rule 1:12-1. Counsel noted in his certification that after he received the order signed by the judge, he personally attempted to schedule a telephone conference with the judge and defense counsel "in order to express my position that the Order was improperly entered and should be vacated." Plaintiff's counsel represented in his certification that

> [t]he phone conference was scheduled for April 19, 2012 with Your Honor, but unfortunately, that was cancelled by the [c]ourt. At this point I was left with no other choice but to file this application due to my reasonable belief that I do not believe that the plaintiff can receive a fair and unbiased hearing before Your Honor.

Defendant filed a cross-motion asking the court to restrain plaintiff from filing future motions seeking the recusal of the trial judge and seeking sanctions "in the event that the plaintiff files future recusal motions." Defendant also asked the court to decide defendant's pending motion seeking an award of counsel fees incurred in defending plaintiff's first appeal, and to enter an order "restraining and enjoining counsel for the plaintiff from sending correspondence to the court in this

matter except without [sic] prior express permission or as part of a properly filed pleading."

By order dated July 20, 2012, the trial judge denied plaintiff's motions seeking: (1) the judge's recusal; (2) to vacate the March 28, 2012 order; and (3) to compel defendant to pay counsel fees incurred by plaintiff in the prosecution of the motion. In the same order, the trial judge denied defendant's cross-motion seeking to restrain plaintiff's counsel or impose sanctions. However, the judge granted defendant's motion with respect to counsel fees and awarded $11,500 as counsel fees incurred in defending the first appeal. The judge also reserved making a final determination "as to counsel fee awards for all counsel fees associated with the discovery leading up to the subsequent withdraw [sic] of [d]efendant's request for a plenary hearing[,]" and directed both parties to submit a certification of services. Finally, the judge determined defendant owed plaintiff a total of $18,443.51 in unallocated arrears for child support and alimony, including defendant's obligation "for the entire month of June." The judge directed the probation department to update its records accordingly and "adjust for any payments made since then."

By letter dated August 7, 2012, addressed to the trial judge, plaintiff's counsel raised what he characterized as "a

very serious issue about whether pursuant to <u>Rule</u> 1:12-1 and Canon 4 of the Code of Conduct for Judiciary Employees" the judge should recuse himself from this case, possibly retroactive to the previous orders entered in March and July 2012. Plaintiff's counsel indicated that the judge's law clerk had accepted a position with defense counsel's law firm. Plaintiff's counsel sought discovery to ascertain when defense counsel offered the position to the law clerk and whether the law clerk "worked on any aspect of this matter" thereafter.

Plaintiff's counsel also claimed there was another basis that may require the trial judge's recusal from the case:

> I have been advised by a fellow lawyer that Your Honor has a familial relationship with [the law clerk]. If I have been incorrectly advised then I apologize. However, if there is a familial relationship between Your Honor and [the law clerk] then pursuant to <u>Rule</u> 1:12-1 and Canon 4 that [sic] Your Honor should be recused from any matters involving [defense counsel's] office regardless of whether [the law clerk] worked on those files. I ask that Your Honor advise my office as to whether pursuant to Directive 17-08 Policy on the Appointment of Judges' Relatives to Judiciary Position issued on December 2, 2008 by the Honorable Glenn A. Grant, a request was made that permitted you to hire [the law clerk]. For these reasons as well it is respectfully submitted that not only should Your Honor be recused from this case, but that you should sua sponte vacate the July 20, 2012 Order that was entered in order to eliminate the need for an appeal to be filed.

Defense counsel responded to plaintiff's letter on August 13, 2012. In response to plaintiff's counsel's allegations concerning the judge's law clerk, defense counsel stated that the law clerk did not accept an offer of employment with her firm until August 1, 2012. Defense counsel thus objected to plaintiff's counsel's request for "'discovery' on this issue." Defense counsel accused plaintiff's counsel of trying to increase the cost of litigation. Defense counsel also characterized plaintiff's counsel's concerns regarding a possible conflict of interest involving the judge's law clerk's employment with her law firm as "nothing more than an attempt to attack this court directly." The record does not reflect that the trial judge responded to either attorneys' letters.

On August 28, 2012, plaintiff filed a formal motion seeking to disqualify the trial judge from continuing to decide matters in this case. Plaintiff also petitioned the judge to vacate the July 20, 2012 order under Rule 4:50-1. Plaintiff sought to compel the trial judge "to provide discovery as to any and all forms the [judge] filled out prior to hiring his 2011/2012 law clerk . . . in accordance with Directive 17-08 Policy on the Appointment of Judges' Relatives to Judiciary Position issued on December 2, 2008 by the Honorable Glenn A. Grant." Plaintiff also sought to compel defense counsel "to provide any and all

information relating to [the law clerk]'s employment with her firm, including but not limited to the date the offer for employment was made and any email/written correspondence between [defense counsel] and [the law clerk] concerning her possible employment."

In her certification in support of the motion, plaintiff claimed the judge was required to recuse himself from this case pursuant to Rule 1:12-1 and Canon 4 of the Code of Judicial Conduct for Judiciary Employees because during the time the trial judge decided motions filed by the parties, his law clerk and defense counsel were discussing the prospect of the clerk working in defense counsel's firm at the conclusion of her clerkship. Plaintiff alleged the law clerk had a familial relationship with the trial judge. Therefore, the law clerk's employment relationship with defense counsel's firm created an appearance of impropriety and bias requiring the judge's recusal.

Defense counsel submitted her own certification in opposition to plaintiff's motion. Paragraphs eight and nine of defense counsel's certification addressed the issue of the law clerk's employment:

> I provide only the following information for the purposes of establishing that the hiring of [the law clerk] was done in an appropriate and transparent manner. Prior to interviewing [the law clerk], I contacted the court and notified the court

A-1947-12T2

of my intention to do so and offer her a position. I specifically indicated that the Presiding Judge of the Family Part should be consulted with regard to any real or perceived conflict. This was done due to the unusual number of cases that were pending before this court at that time. It is my understanding that the court did in fact notify the Presiding Judge of the situation and follow his guidance with regard to same.

I should also note that [the law clerk] interviewed with several other law firms after being offered a position with my office.

The trial judge heard oral argument on plaintiff's recusal motion on November 27, 2012. The following exchange between the trial judge and plaintiff's counsel addressed plaintiff's concern regarding the judge's familial relationship to his former law clerk:

THE JUDGE: Okay. And the information that you received from your friend was that I'm related to [the law clerk].

PLAINTIFF'S ATTORNEY: That was the information I received. And I sent Your Honor two letters before filing this application and I received no response back asking if that were the case. I had heard that from a number of different people in the courthouse. So we left, we had no choice when I had no response to file an application.

THE JUDGE: Okay. And your, the basis for you filing the motion is that all of this is in violation of Guideline B to Canon 4, as well as the directive of the Honorable Glen Grant, Directive 17-08.

PLAINTIFF'S ATTORNEY: Well, I wouldn't say that. The directive just dictates - - I wouldn't say a violation of the directive. I would say Canon 4 and the case law that's cited in our brief, some of the Court Rules as well.

THE JUDGE: Okay. And Canon 4 which you cite in your brief provides the Guideline B, the Canon 4 provides that immediate family, and it's in quotations, shall include all members and it goes on and on and on and on and on.

Well, I've read that, I've read that guideline and [the law clerk] does not fall within that category as being related to me, so.

PLAINTIFF'S ATTORNEY: Well it's my - - I mean if Your Honor is saying she's not a niece, a child of an aunt or uncle of yours, a - - it's a big category. Niece - -

THE JUDGE: No, I read the category.

PLAINTIFF'S ATTORNEY: I doubt she's an aunt. I would assume she's a niece or a cousin and that's, it was my understanding that would somewhere fall - -  I mean if Your Honor is saying that she is not a niece or a I guess a cousin of yours, then it wouldn't fall in that category.

But I don't know what, if there's some familial relation, what other, I don't know any other familial relations that there are.

THE JUDGE:  Okay, well I'm saying that I've read through Canon 4 and she doesn't fall within that group outlined by Canon 4.

So I don't know what information your attorney friend has provided to you.  But it's, it appears to be different from the information I'm telling you right now.

A-1947-12T2

PLAINTIFF'S ATTORNEY: All right. Well, and Your Honor the other thing was as well that, my understanding [the law clerk] it's our belief, worked on this case after she was offered a job from [defense counsel].

THE JUDGE: Worked on it with me? In my - -

PLAINTIFF'S ATTORNEY: Yes, worked on the recommendations for any recommendations she had made that she was substantially involved in this case in making - - and that's the case law we cited.

THE JUDGE: Right, no, okay.

As this colloquy illustrates, the trial judge did not provide plaintiff's counsel with a straightforward, clear statement describing his familial relationship to his former law clerk. Defense counsel was equally vague in her statements describing when she first approached the law clerk to discuss a possible employment relationship. Plaintiff's counsel made his request for clarification of this timeline in the following statement:

PLAINTIFF'S ATTORNEY: Your Honor, I'm looking to find out when [the law clerk] was offered, if she was offered, when she was offered the job. What communications there were between [defense counsel] and [the law clerk]. And at that point in time, what work [the law clerk] did [sic] on this case.

You know, it becomes a question of, again, this is, we know August 1st [2012] is when [defense counsel] says that's my soon to be associate. But we don't know when the offer was made. [Defense counsel] says in her certification she contacted Your Honor about

this. So I don't know when that contact took place. Your Honor would know that.

And that Your Honor, - - I think it's paragraph 8 of [defense counsel's] reply certification. ["]Prior to interviewing her, I contacted the Court and notified my intentions to do so and offer her a position.["]

And so, I don't know when this [c]ourt was contacted. [Defense counsel] doesn't put a date. I know Your Honor would be aware. So this is even prior to the job being offered to her. Was that May [2012]? Was it June [2012]? What period of time? [Defense counsel] doesn't tell us.

My client doesn't have a right to have, doesn't have a right to be really concerned that this person was who assisting Your Honor, writing recommendations, reviewing paperwork, had already been offered or been discussions, negotiations with [defense counsel] to get a job.

THE JUDGE: [Addressing plaintiff's counsel], I think that your, but what you're looking to do is go on a fishing expedition. Because the order was written on July 20th [2012]. According to [defense counsel] that an offer was given on August 1st [2012]. And so I'm not going to let you conduct a fishing expedition . . . [.]

At the conclusion of the argument, the trial judge asked defense counsel to address the Supreme Court's holding in Comparato v. Schait, 180 N.J. 90 (2004):

THE JUDGE: [Addressing defense counsel] let me ask you this and you know we could be here all day and tomorrow listening to the facts of this case. But I'd really like for you to focus on paragraph 4 of your

16

certification where you say, where you refer to the [Comparato] case . . . [.] The case law clearly indicates that a wall must be put up. And you hereby certify that a wall has been created in our firm. Why don't you tell me a little bit about that which would alleviate any concerns the [c]ourt might have.

DEFENSE COUNSEL: [The former clerk] doesn't work on any files where there was a motion that Your Honor heard. My understanding of the way this works is because I was a former clerk and this is the way it worked for me -

. . . .

THE COURT: Okay, what about [plaintiff's counsel] in his one form of relief that he is seeking, he's asking, compelling [defense counsel] to provide any and all information related to [the law clerk's] employment with her firm, including but not limited to the date of the offer, et cetera, et cetera, et cetera. What do you have to say about that?

DEFENSE COUNSEL: My recollection and I did talk to her about this one aspect of it, because it doesn't have anything to do with the substance of the case, is that I did not make her the offer formally.

And I know that seems a little unusual. But I will say on the record that when I interviewed her, basically the offer that I extended to her was, if you don't get anything else, let me know. Because I liked her. I wanted to have her in the office. I thought she was a hard worker. I think she was the hardest working law clerk that was here all year.

THE JUDGE: So you don't think that [plaintiff's counsel] is entitled to this information is what you're saying?

DEFENSE COUNSEL: No.

THE JUDGE:  Okay.

By order dated November 27, 2012, the trial judge denied plaintiff's motion: (1) to vacate the July 20, 2012 order; (2) seeking copies of the forms the judge completed to hire the law clerk for court-year 2011-2012 in accordance with Directive 17-08; (3) to compel defense counsel to provide information related to the hiring of the trial judge's law clerk, including the date the offer of employment was made and any email or other written communications between defense counsel and the law clerk concerning her employment at defense counsel's firm; (4) to have the judge recuse himself from this case; and (5) to transfer the case to another judge.

II

Against this backdrop, plaintiff now appeals arguing the trial judge committed reversible error when he denied her motion to vacate the July 20, 2012 order because there is sufficient evidence to infer his law clerk was engaged in employment negotiations with defense counsel during the time the judge entered this order.  Plaintiff also urges us to remand the matter to permit the trial judge to make the factual findings and conclusions of law required by Rule 1:7-4(a).

We will divide our analysis into three parts. The first part relates to the law clerk's pre-employment negotiations and activities with defense counsel while the trial judge was involved in carrying out this court's directive to conduct an ability-to-pay hearing and determine defendant's arrears with respect to child support and alimony. The second part will address the ethical implications to the trial judge once the law clerk was formally employed by defense counsel. The third part will address plaintiff's allegations concerning the trial judge's familial relationship to his law clerk and the ethical implications that arose once the law clerk accepted a position with defense counsel's firm.

A

Rule 1:12-2 authorizes a party to file a motion seeking to disqualify the judge presiding over the case. The motion for disqualification must state the reasons supporting the moving party's position, ibid., and must be made directly to the judge presiding over the case. State v. McCabe, 201 N.J. 34, 45 (2010). The decision to grant or deny the motion for disqualification rests entirely within the sound discretion of the trial judge. Chandok v. Chandok, 406 N.J. Super. 595, 603 (App. Div.), certif. denied, 200 N.J. 207 (2009). However,

19                                                    A-1947-12T2

"[w]e review de novo whether the proper legal standard was applied." McCabe, supra, 201 N.J. at 45.

Pursuant to Rule 1:12-1(a), a judge is disqualified from sitting in any matter if the judge "is by blood or marriage the second cousin of or is more closely related to any party to the action[.]" Under Rule 1:12-1(g), the judge is disqualified "when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." Our Supreme Court has recently adopted the following standard to assess whether a judge's personal behavior creates an appearance of impropriety. According to the Court, the judge must ask: "Would an individual who observes the judge's personal conduct have a reasonable basis to doubt the judge's integrity and impartiality?" In re Reddin, supra, 221 N.J. at 223.

Here, the record shows defense counsel approached the trial judge sometime before August 1, 2012,[1] to apprise him of her interest in hiring his law clerk. We do not know, however, when that first contact occurred, where it took place, and what was

---

[1] Plaintiff included in the appellate record a copy of defense counsel's Facebook page dated August 1, 2012, in which defense counsel stated: "Dinner — with [law clerk] [at] Asian Harbor. In approximately 1 hour my soon to be new associate should be here to shop for office furniture. [S]he finally said yes. [O]nly one more month on my own and I will officially be 'we' again. Of course[,] I'll still be the boss[.]"

specifically discussed between the judge and defense counsel. Moreover, given plaintiff's subsequent motion practice related to this encounter, we can infer that this was an ex parte meeting between defense counsel and the trial judge. Left unaddressed, these issues raise troubling questions about the propriety of defense counsel's unilateral access to the judge during a period of time when the parties were engaged in active and contentious motion practice. Under these circumstances, an objective observer would have a reasonable basis to doubt the judge's impartiality because the meeting between the judge and defense counsel occurred without prior notice to plaintiff's counsel and the topic of the encounter concerned an employment opportunity for a confidential member of the judge's staff. See In re Reddin, supra, 221 N.J. at 223.

Based on this record, we are compelled to remand this matter for the judge to make specific findings describing the law clerk's pre-employment activities with defense counsel. The judge must make specific findings regarding the timing and substance of defense counsel's employment discussions with his law clerk, including whether the law clerk independently notified the judge of her employment negotiations with defense counsel as required by RPC 1.12(c). The judge must also describe what duties the law clerk performed for him in

21

connection with this case _after_ defense counsel revealed her interest in hiring his law clerk. Specifically, the judge must determine whether the law clerk "substantially participated" in the judge's decisions related to this case. In making this determination, the judge should be guided by the factors described by the Supreme Court in _Comparato_:

> Whether such [substantial] participation has occurred ultimately depends on the totality of circumstances in a given case. Relevant to the inquiry is whether the law clerk was involved in the case beyond performing ministerial functions or merely researching general legal principles for the judge. Conduct rising to the level of "personal and substantial" participation would involve a substantive role, such as the law clerk recommending a disposition to the judge or otherwise contributing directly to the judge's analysis of the issues before the court.
>
> [_Comparato_, _supra_, 180 _N.J._ at 98-99.]

If the judge concludes the law clerk "substantially participated" in any of the decisions he reached in this case _after_ defense counsel revealed to him her interest in hiring his law clerk _or_ after defense counsel revealed to the law clerk her interest in hiring her, the judge is required to vacate any orders entered during this time period and recuse himself from further involvement in this case. See _In re Reddin_, _supra_, 221 _N.J._ at 223; _R._ 1:12-1(g).

We next address plaintiff's allegations concerning the law clerk's participation in this case after she was hired by defense counsel's firm. The record in this respect is also sparse and inadequate to conduct a meaningful appellate review. The only evidence presented to the trial court with respect to the law clerk's duties after she became an associate in defense counsel's firm is contained in a certification submitted by defense counsel in opposition to plaintiff's motion to disqualify the trial judge. Paragraph 4 of this certification states, in relevant part:

> The Comparato case clearly indicates that there is no conflict or ethical violation created merely by a [law clerk] interviewing with or accepting employment with a law firm that appears before the [law clerk]'s judge. Rather the case clearly indicates that a "wall" must be put up and the [law clerk] must be excluded from working on the file — at the law firm. I hereby certify that such a wall has been created in our firm. Moreover, the court should note that in Comparato, the trial court was not forced to recuse itself either.

Defense counsel's proffer of the Supreme Court's holding and analysis in Comparato is not correct because it fails to address the absence of information concerning the law clerk's involvement in the case during her clerkship. The plaintiff's principal objection in Comparato was predicated on the notion

23

that the clerkship allowed the former law clerk to acquire information that the adversary firm "could have used or still might use to its advantage, making it too late to employ a screening mechanism." Comparato, supra, 180 N.J. at 99-100. The Supreme Court rejected the plaintiff's application for recusal because there was ample evidence in the record attesting to the law clerk's activities during her clerkship as involving primarily ministerial functions. Id. at 98-100.

Here, by contrast, the record does not contain any description of the duties the law clerk performed for the trial judge. Without this vital information, we are unable to determine whether the trial judge erred in accepting defense counsel's certification as well as her self-serving unsworn representations at oral argument as sufficient evidence on this critical point. On remand, after making specific findings describing the law clerk's functions and duties during her clerkship, the judge must then determine, based on competent evidence, what measures defense counsel took to screen the law clerk from any participation in this case. The restrictions imposed on the law clerk in her capacity as defense counsel's associate must be commensurate to the law clerk's duties during her clerkship and must also be capable of removing any appearance of impropriety. Comparato, supra, 180 N.J. at 98-99.

24                                             A-1947-12T2

We conclude our analysis by addressing plaintiff's claims concerning the trial judge's familial relationship to his former law clerk. Plaintiff argues that independent of any prophylactic measures defense counsel may have taken or can take to screen the law clerk from any involvement in this case, the trial judge's familial relationship to the law clerk, now defense counsel's associate, creates a per se conflict of interest which requires the trial judge to disqualify himself on his own motion.

Plaintiff's argument is predicated on the strict proscriptions under Rule 1:12-1(b), which precludes a judge from sitting in any case if the judge "is by blood or marriage the first cousin of or is more closely related to any attorney in the action. This proscription shall extend to the partners, employers, employees or office associates of any such attorney except where the Chief Justice for good cause otherwise permits[.]" (Emphasis added).

Plaintiff also relies on Administrative Directive 17-08, which describes the judiciary's policy on the Appointment of Judges' Relatives to Judiciary Positions issued on December 2, 2008 by Judge Glenn A. Grant in his capacity as Acting

25                                                    A-1947-12T2

Administrative Director of the Courts.[2]  The public policy underpinning the Directive is succinctly stated under section one: "No appointment of judges' close relatives to Judiciary positions, with the exception of law clerk positions, may be made without the prior approval by the Supreme Court, by application through the Administrative Director's office." (Emphasis added).

Section five of Administrative Directive 17-08 defines a "Judge's close relative" as including the following categories of familial status:

> The judge's spouse, civil union partner, or registered domestic partner;
>
> The following relatives of the judge or the judge's spouse, civil union partner or registered domestic partner:
>
> child or legal ward; parent, grandparent, or grandchild; uncle or aunt; brother or sister; nephew or niece; first cousin; or the spouse, civil union partner, or registered domestic partner of any of the above.
>
> [Id. at 4.]

---

[2] Directive 17-08 is available on the judiciary's website. Judiciary of the State of New Jersey, Policy on the Appointment of Judges' Relatives to Judiciary Positions (Dec. 2, 2008), available at http://www.judiciary.state.nj.us/directive/2008/dir_17_08.pdf. "Furthermore, administrative directives have the force of law." R.K. v. D.L., 434 N.J. Super. 113, 130 n.7 (App. Div. 2014).

The record shows plaintiff's counsel asked the trial judge to disclose the familial relationship, if any, he had to the law clerk he hired to serve during court-year 2011-2012. In response, the judge indicated on the record that he had read "that guideline" and concluded that the law clerk "does not fall within" any of the specific categories outlined in Section five of Administrative Directive 17-08. Despite plaintiff's requests for the trial judge to identify the precise familial relationship he had to his law clerk, the judge declined to do so.

Our Supreme Court recently admonished those of us who are entrusted to serve as judges that:

> [t]o the public, judges embody the court system. As a result, their conduct -- both on and off the bench -- can promote as well as erode confidence in the Judiciary. For that reason, the ethical principles that guide judges' behavior extend not only to the performance of their official duties but also to their personal lives.

> [In re Reddin, supra, 221 N.J. at 223.]

In DeNike, the Court stated the key question that must be answered when a claim is made challenging a judge's impartiality is, "[w]ould a reasonable, fully informed person have doubts about the judge's impartiality?" DeNike, supra, 196 N.J. at 517. In In re Reddin, the Court modified this straightforward query by adding what it characterized as "an element of objective reasonableness." In re Reddin, supra, 221 N.J. at

A-1947-12T2

234. As framed by Chief Justice Rabner, "[t]o assess whether a judge's personal behavior creates an appearance of impropriety, [the question is] 'Would an individual who observes the judge's personal conduct have a reasonable basis to doubt the judge's integrity and impartiality?'" Ibid.

Here, the record reflects plaintiff's counsel asked the trial judge a number of times to define the judge's familial relationship, if any, to the person who worked as his law clerk during court-year 2011-2012. At the time plaintiff's counsel asked this straightforward question, the law clerk had finished her one-year clerkship and was then employed as an associate in defense counsel's firm. The record shows that in lieu of giving a direct answer to this question, the judge stated, in essence, a legal conclusion. Under these circumstances, we are satisfied that an individual witnessing this exchange between the trial judge and plaintiff's counsel would have a reasonable basis to doubt the judge's impartiality. At best, the judge's response appeared needlessly evasive; at worst, it was unacceptably calculating. A judge's answer to a direct question seeking to determine a basis for the judge's recusal must be candid, honest, and straightforward, both in form and in fact. This is the standard we apply to witnesses in a trial and to lawyers before the bench. A judge's conduct in this respect must

exemplify these virtues by dispelling any hint of impropriety or gamesmanship. Unfortunately, the record of the judge's colloquy with plaintiff's counsel concerning his familial relationship to his law clerk only served to reinforce a sense of uneasiness, giving credence to the perception that the judge's response was incomplete in some unknown, yet possibly material fashion.

Matrimonial cases present particular and unique challenges to the judiciary. These cases are often contentious because the nature of the controversy strikes at the very core of one of the most intimate of all human relationships. As our colleague Judge Donald Collester, Jr. eloquently noted:

> [S]omething . . . goes to the essence of marriage and is probably best left to poets rather than judges. It is the reason that people do get married. For marriage changes who you are. It gives stability, legal protection and recognition by fellow citizens. It provides a unique meaning to everyday life, for legally, personally and spiritually a married person is never really alone. Few would choose life differently. [Lewis v. Harris, 378 N.J. Super. 168, 220 (App. Div. 2005) (Collester, J., dissenting), aff'd in part, modified in part, 188 N.J. 415 (2006).]

Given this exalted place marriage as an institution occupies in our society, litigants embroiled in the legal dissolution of their union are often emotionally traumatized. They bring to these legal proceedings a deep sense of disappointment and an element of distrust that is rooted in the

nature of the dissolution itself. Our Supreme Court has consistently recognized that judges who sit in the Family Part have a great sensitivity to these concerns and bring a high level of expertise to these emotionally fragile matters. See N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014) (citing Cesare v. Cesare, 154 N.J. 394, 412-13 (1998)). We thus expect our colleagues who sit in this legally difficult and emotionally demanding Part of the Chancery Division to be especially mindful of the challenges associated with this assignment.

On remand, the trial judge must provide a direct, straightforward answer to plaintiff's question concerning the familial relationship the judge has to the person who served as his law clerk during court-year 2011-2012. Ultimately, the answer to this question may serve to dissipate any reasonable doubts regarding the judge's impartiality.

III

In Summary

We vacate the trial court's order denying plaintiff's motion seeking his recusal pending the outcome of the hearings the judge must conduct on remand. We thus remand this matter for the trial judge to determine with particularity the timeframe of defense counsel's employment discussions with the

30                                                    A-1947-12T2

judge's law clerk, and the specific date defense counsel made an offer of employment to the law clerk. The judge must also make factual findings concerning the duties the law clerk performed during her tenure in 2011-2012. The judge must state what prophylactic measures he took to avoid any potential conflict of interest after he learned defense counsel was interested in hiring his law clerk. The judge must then determine the extent to which the law clerk's employment association with defense counsel created an appearance of impropriety requiring his recusal under the standards adopted by the Supreme Court in In re Reddin. Finally, the judge must describe his specific familial relationship to the person who served as his law clerk during the 2011-2012 court term.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION